MARKAM F. PALISBO, Plaintiff-Appellant, Cross Appellee *v.* HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, Defendant-Appellee, Cross Appellant

NO. 5600

and

MICHAEL M. RAMOS and CAROLE T. RAMOS, Plaintiffs-Appellants, Cross Appellees *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant-Appellee, Cross Appellant

NO. 5601

APRIL 2, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE FUKUSHIMA ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY MENOR, J.

By stipulation of the parties, these cases have been consolidated for argument and decision on appeal. Both stem from injuries sustained as a result of a motor vehicle accident occurring on June 22, 1971.

On that date Markam F. Palisbo, Neal Ramos, Kurt Bruhn, and Richard Muneoka were passengers in an automobile, owned by one Damasco Clemente, Jr., and operated by his son, Glen K. Clemente, a minor. As a result of Glen Clemente's negligence, the motor vehicle struck a guy wire supporting a telephone pole and was wrecked. Glen Clemente, Kurt Bruhn, and Markam Palisbo were all injured in varying degrees, while Neal Ramos and Richard Muneoka were killed.

Markam F. Palisbo filed suit against Glen Clemente and his parents, for the injuries he sustained in the accident, and was awarded judgment in the sum of $30,000. Michael M. Ramos and Carol T. Ramos, parents of Neal Ramos, filed suit against the same defendants for the death of their son, and obtained judgment in the sum of $42,027.21.

State Farm Fire and Casualty Company was the insurer of the automobile driven by Glen Clemente, under an insurance policy with bodily injury limits of liability of $10,000 per person and, subject to said limit per person, $20,000 per accident. The insurance company filed an interpleader action in circuit court, asking the court to prorate the policy limits of $20,000 among the passengers entitled thereto. The trial court did so by allocating $6,000 to Markam Palisbo, $6,500 to Michael M. Ramos and Carol T. Ramos, and the balance to Kurt Bruhn and the survivors of Richard Muneoka.

At the time of the accident, Markam Palisbo was covered by a policy of insurance issued by Hawaiian Insurance & Guaranty Company, Limited containing an uninsured motorist provision which required the insurance company to pay "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured." Neal Ramos and his parents were insured under a similar policy by Government Employees Insurance Company. Both policies placed a liability limit of $10,000 per person and, subject to such limit, $20,000 per accident.

Suit was filed by Palisbo and the parents of the deceased Neal Ramos against their respective insurance companies, each seeking the maximum amount of $10,000, under their "uninsured motorist" policies. The defendant insurance companies denied liability. The parties moved for summary judgment. The trial court denied the insurance companies' motions and granted judgment in part for the plaintiffs. It awarded $4,000 to Plaintiff Palisbo, and $3,500 to Plaintiffs Ramos. These amounts represented, in the case of Palisbo, the difference between the sum of $6,000 he received from the negligent driver's insurance carrier (State Farm) and his uninsured automobile policy limit of $10,000 and, in the case of the Ramoses, the difference between the $6,500 they received from State Farm and their uninsured policy limit of $10,000. From these judgments the plaintiffs appeal, and the defendants cross-appeal.

The "uninsured motorist" policies upon which the plaintiffs predicate their claims were issued by the defendant insurance companies, pursuant to HRS § 431-448, which provides in pertinent part as follows:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership. maintenance of a motor vehicle, shall be [issued], with respect to any motor vehicle registered . . . in this State, unless coverage is

provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7. . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting there-from . . . . (Emphasis added)

Glen Clemente, the negligent driver of the ill-fated motor vehicle in this case, was covered by liability insurance with policy limits of $10,000 per person, and $20,000 per accident, as prescribed by the financial responsibility law. *See* HRS Chapter 287. Because of the multiplicity of claims, however, plaintiff Palisbo's actual reimbursement from the Clemente policy was limited to $6,000, and the plaintiffs Ramos to $6,500. Their adjudicated claims were far in excess of the amounts they actually received from this particular insurance fund.

At issue, therefore, is whether they are entitled to recover under their respective uninsured motorist policies. More specifically, the threshold question is, whether Glen Clemente was operating an "uninsured motor vehicle" at the time of the accident, within the meaning of HRS § 431-448.

Where the results of a literal application of certain statutory terms would be plainly at variance with the remedial purposes of the law, and obviously would be inconsistent with the legislative policy embodied within the statutory scheme, courts have followed the purpose, rather than the literal words of the statute. Accordingly, it has been held that a vehicle covered by insurance below the limits required by the financial responsibility law was an "uninsured motor vehicle" for the purposes of the uninsured motorist statute. *Taylor v. Preferred Risk Mutual Insurance Company*, 225 Cal. App. 2d 80, 37 Cal. Rptr. 63 (1964). Other cases have held motorists to be "uninsured" in the following situations: (1) the policy fails to cover the injury involved; (2) the insurer has become insolvent; and (3) the owner or operator of the vehicle causing the accident is unknown. *See generally* Annotation: *Automobile Insurance: What Constitutes an*

*"Uninsured" or "Unknown" Vehicle or Motorist, Within Uninsured Motorist Coverage*, 26 A.L.R.3d 883 (1969).

We recognize, however, that on the specific issue before us, there is eminent authority on both sides of the question.[1] Nonetheless, we find that the rationale of *Porter v. Empire Fire and Marine Insurance Company*, 106 Ariz. 274, 475 P.2d 258 (1970), most closely expresses the intent of Hawaii's legislature in enacting Act 10, Session Laws of Hawaii 1965 [HRS § 431-448], In *Porter*, the Arizona court when faced with an identical situation stated:

"The uninsured policy is issued for the protection of the insured in the minimum amount provided in the Financial Responsibility Act. Otherwise. as we previously pointed out, the insured might be better off if the offending motorist had no insurance whatsoever. We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance; . . . . This is so whether this sum is recoverable under the insured's policy alone or in combination with those funds actually receivable from the tort-feasor's liability coverage.'' 106 Ariz. at 279, 475 P.2d at 263.

In its Standing Committee Report No. 194 on H.B. 26 (now HRS § 431-448) the legislature stated:

"An insurance company offering uninsured motorist protection engages to pay to the insured, spouse or minor children of either, resident in the named insured's household, sums not to exceed the stated limits, for any uncollectible valid claim or unsatisfied judgment for damages resulting from bodily injury or death, resulting

---

[1] *E.g.*, *see* Lund v. Mission Ins. Co., 528 P.2d 78 (Or. 1974), and cases cited therein; Travelers Ins. Co. v. Bouzer. 39 Cal. App. 3d 992. 114 Cal. Rptr. 651 (1974); and Wilbourn v. Allstate Ins. Co., 293 Ala. 466, 305 So. 2d 372 (1974). holding essentially that the statute protected the plaintiff against a noninsured motorist, but not against a motorist who *vis-a-vis* the plaintiff was underinsured. On the other hand, cases such as Hanlon v. Buckeye Union Ins. Co., 73 Ohio Op. 2d 267, 324 N.E.2d 598 (C.P. 1975); and *Porter v. Empire Fire and Marine Ins. Co., 106 Ariz. 274, 475 P.2d 258 (1970). have expressed a contrary view.

from the ownership, maintenance or use of an automobile. The claim becomes payable when the innocent victim shows that his claim is valid, that is, that there is legal liability on the person alleged to be responsible and that the claim cannot be collected because of the financial irresponsibility of that person or because of the inability to identify the person or persons responsible." 1965 House Journal at 582.

The avowed purpose of the statute is to encourage self-protection against the financially irresponsible motorist through *voluntary insurance*. To make this realistically possible, it requires liability insurance companies to offer their clients this protection in at least the minimum amounts established by the financial responsibility law. The policy required under the financial responsibility law is for the protection of the public generally, while uninsured motorist insurance is for individuals who have the foresight to protect themselves against the financially irresponsible motorist. The statute was clearly designed to enable the purchaser of the latter type of insurance to assure himself and members of his household of not less than the minimum protection provided for the general public in the financial responsibility law. The uninsured motorist policy is personal to the insured. This is what he bargained for, and one which he was encouraged to purchase by the legislature.

The statute under consideration must be liberally construed in accordance with its remedial purposes and consistent with the legislative intent. Accordingly, we hold that where the tortfeasor's automobile liability insurance is inadequate to provide compensation to the injured policyholder of an uninsured motorist policy, for at least the minimum amounts specified by the financial responsibility law, the tortfeasor is, as to that policyholder, "uninsured" to the extent of the insufficiency for the purposes of the statute. *Porter v. Empire Fire and Marine Insurance Company, supra*; *Hanlon v. Buckeye Union Insurance Co.*, 73 Ohio Op. 2d 267, 324 N.E.2d 598 (C.P. 1975). A contrary finding would tend to subvert the statutory scheme designed to protect innocent

victims of the financially irresponsible driver, and render the uninsured motorist statute in these cases ineffective.

The plaintiffs contend, however, that they are entitled to the full face values of their respective policies, in addition to the amounts they have already received under the tortfeasor's policy. We disagree. Recovery by the plaintiffs under both the tortfeasor's policy and their respective uninsured motorist policies is limited to the minimum amounts specified in the financial responsibility law. *Allstate Insurance Company v. Pesqueria*. 19 Ariz. App. 528, 508 P.2d 1172 (1973). Coverage in excess of those minimum amounts must be the direct result of contractual arrangements between the parties. There are no such arrangements here. The policies before us were issued in conformity with, and as a mandatory consequence of the statute. As such, they are susceptible to the same interpretation.

*Walton v. State Farm Auto Ins.*, 55 Haw. 326, 518 P.2d 1399 (1974), is not applicable here. In that case, the passenger of a motor vehicle was injured as a result of the negligence of a third party motorist who was totally uninsured. The passenger sought to recover under both his uninsured motorist policy and that of his host driver. Viewing the question before us as a narrow one, we held that the passenger would be permitted to recover under both policies so long as the total amount recovered did not exceed the actual damages suffered. Because the tortfeasor in that case was an admitted uninsured motorist, the only question for our determination was the validity of the "other insurance" clauses in the policies, when measured against the uninsured motorist insurance statute. We held the limitation to be invalid. *See also Curran v. State Automobile Mutual Ins. Co.*, 25 Ohio St.2d 33, 266 N.E.2d 566 (1971).

Here, however, we are faced with a different situation. The host driver in this case was the adjudged tortfeasor. If he had been totally uninsured, the plaintiffs would have been entitled to recover the maximum amount of $10,000 per person under their respective uninsured motorist insurance policies. If the negligent driver had carried insurance suffi-

cient to compensate the injured parties in the amount of $10,000 per person, the plaintiffs would not have been able to recover additionally under their respective policies. We hold only that where a tortfeasor is underinsured as to a particular policyholder of uninsured motorist insurance, the latter is entitled to recover under his policy the difference between the amount he receives from the tortfeasor's insurance and the face value of his uninsured motorist policy. This, in our opinion, is best expressive of the legislative intent.

The judgments below are affirmed.

*Myer C. Symonds (Bouslog & Symonds*, of counsel), for plaintiffs-appellants, cross appellees.

*Charles R. Kozak (Rice, Lee & Wong*, of counsel), for defendant-appellee, cross appellant Hawaiian Insurance & Guaranty Company, Limited.

*J. Richard Morry (Howard F. McPheeters* on the briefs, *Conroy, Hamilton, Gibson, Nickelsen & Rush*, of counsel), for defendant-appellee, cross appellant Government Employees Insurance Company.