MITSUO YAMAMOTO and KIMIYE YAMAMOTO, Plaintiffs-Appellants, *v.* PREMIER INSURANCE COMPANY, Defendant-Appellee, and GEORGE MAKUAOLE, JOHN DOES 1-5, JANE DOES 1-5, DOE PARTNERSHIPS 1-5 and DOE CORPORATIONS 1-5, Defendants

NO. 8506

(CIVIL NO. 56639)

AUGUST 3, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiffs Mitsuo Yamamoto (Mr. Yamamoto) and Kimiye Yamamoto (Mrs. Yamamoto) appeal from a *nunc pro tunc* summary judgment entered in favor of defendant Premier Insurance Company (Premier),[1] contending that the court erred as a matter of law in granting summary judgment to Premier. We reverse.

On December 30, 1976, Mr. Yamamoto suffered severe injuries in an automobile collision with a vehicle driven by defendant George Makuaole (Makuaole). Mr. Yamamoto was driving one of three vehicles owned by him, all of which were insured by Premier under one policy covering uninsured motorist risk in the amount of $25,000 per vehicle. Makuaole's automobile policy was insured against the risk of liability for personal injury or death in the amount of $25,000. On December 29, 1978, Mr. Yamamoto filed a personal injury action against Makuaole and Mrs. Yamamoto joined in the suit claiming loss of consortium.[2] The Yamamotos' suit also included a claim against Premier for wrongful denial of uninsured motorist coverage benefits due them under their insurance policy.

The Yamamotos filed a motion for partial summary judgment against Premier on October 20, 1979 and Premier filed a motion for summary judgment on November 13, 1979. After hearing, the court granted Premier's motion and denied Yama-

---

[1] On April 27, 1983, on temporary remand from this court, the trial court entered a *nunc pro tunc* Rule 54(b), Hawaii Rules of Civil Procedure, certification of Premier's summary judgment against Mr. and Mrs. Yamamoto and Mr. Yamamoto's judgment against Makuaole, thereby permitting this appeal.

[2] The suit does not mention against which defendant the loss of consortium claim is directed. We assume it is Makuaole.

motos' motion. Mr. Yamamoto later obtained a $300,156.84 judgment against Makuaole in a bench trial.[3]

A motion for summary judgment may not be granted where there are genuine issues of material fact present. On appeal, a reviewing court will examine the entire record for any issues of material fact. *Costa v. Able Distributors,* 3 Haw. App. 486, 653 P.2d 101 (1982); *Ottensmeyer v. Baskin,* 2 Haw. App. 86, 625 P.2d 1069 (1981). Facts which are properly shown and any inferences which may be properly drawn therefrom, will be considered in the light most favorable to the non-moving party. *Gealon v. Keala,* 60 Haw. 513, 591 P.2d 621 (1979); *Costa v. Able Distributors, supra.* If there are no genuine issues of material fact, a movant is entitled to judgment as a matter of law if it is clear that there is no discernible theory under which plaintiff could recover. *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821, *reh'g denied,* 50 Haw. 639 (1968); *Costa v. Able Distributors, supra.* The Yamamotos contend that the trial court erred because there is a discernible theory under which they could have recovered. We agree.

Under the Yamamotos' policy,[4] Premier would be required to pay uninsured motorist benefits if either Mr. or Mrs. Yama-

---

[3] The fact that the court did not render an award on Mrs. Yamamoto's claim has no bearing on this opinion, since we must judge the summary judgment action on the basis of the facts at that time. However, if on remand it is determined that Mrs. Yamamoto is not entitled to any damages for loss of consortium, then there is no possibility that Mr. Yamamoto will recover less than the minimum amount required by the financial responsibility law.

[4] We note that the copy of the Yamamotos' insurance policy attached to their memorandum in support of their motion for partial summary judgment was neither sworn to nor certified and was, therefore, in violation of Rule 56(e), Hawaii Rules Civil Procedure. The requirements of Rule 56(e) are mandatory, *Pacific Concrete FCU v. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980); *Cane City Builders v. City Bank,* 50 Haw. 472, 443 P.2d 145, *reh'g denied,* 50 Haw. 523 (1968), and documents which have been filed in violation of the rule must be disregarded. *Ailetcher v. Beneficial Finance Co.,* 2 Haw. App. 301, 632 P.2d 1071 (1981); *Lane v. Yamamoto,* 2 Haw. App. 176, 628 P.2d 634 (1981); *Carriers Insurance Co. v. Domingo,* 1 Haw. App. 478, 620 P.2d 761 (1980); *DeMund v. Lum,* 1 Haw. App. 443, 620 P.2d 270 (1980); *Munds v. First Insurance Co.,* 1 Haw. App. 104, 614 P.2d 408 (1980).

However, Premier's memorandum quotes verbatim the uninsured motorist provision of the policy submitted by the Yamamotos. Since the parties agree on the terms of the provision, we accept their offering as factually establishing the provision.

moto, or both, were injured as a result of an auto accident with an "uninsured automobile." Insofar as is pertinent to this opinion, uninsured automobile is defined by the policy as follows:

"uninsured automobile" * * * means:

(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder * * *

Thus, the policy's definition of an uninsured automobile includes a vehicle with no liability insurance as well as a vehicle whose liability insurance coverage is less than the statutory requirement of $25,000. *See* Hawaii Revised Statutes (HRS) § 431-448 (1976).[5]

---

[5] HRS § 431-448 provides:

Automobile liability; coverage for damage by uninsured motor vehicle. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.

Prior to 1982, HRS § 287-7 established the minimum coverage for bodily injury or death at $10,000. However, in enacting the "no-fault" motor vehicle insurance law in 1974, Act 168, 1974 Hawaii Sess. Laws 317, the legislature required minimum coverage for injury or death in the amount of $25,000. *See* HRS § 294-10(a)(1) (1976). The no-fault statute also repealed "all other laws relating to motor vehicle insurance which

Our supreme court has held that the legislative policy expressed in.the motor vehicle insurance statutes really provides another category of uninsured motorists. In *Palisbo v. Hawaiian Insurance & Guaranty Co.,* 57 Haw. 10, 547 P.2d 1350 (1976), the court held that where there is more than one injured party in an automobile collision and the tortfeasor's insurance, though meeting the mandatory minimum amount prescribed, is not adequate to cover each injured party's damages up to the minimum amounts specified by the financial responsibility law, the tortfeasor is considered uninsured for the purposes of uninsured motorist coverage under the injured parties' automobile insurance policies, but only to the extent of the insufficiency.

In addition, in *Allstate Insurance Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978), a case where the tortfeasor was in fact an uninsured motorist, the supreme court held that where the injured party has two or more automobiles insured under a single liability insurance policy providing uninsured motorist coverage, separate uninsured motorist coverage is created for each vehicle and the insured may recover up to the maximum amount of the coverage for each vehicle. In short, the insured may "stack" his coverage.

Thus, it follows that if, within the meaning of our statutes and case law, Makuaole is not an uninsured motorist, then the Yamamotos are limited to Makuaole's $25,000; but if Makuaole is an uninsured motorist, then the Yamamotos may "stack" the uninsured motorist coverage of the three automobiles and may claim against not only Makuaole's $25,000 coverage but also their $75,000 coverage for any damages not recovered from Makuaole. We hold that Makuaole is, and the Yamamotos may.

In *Palisbo, supra,* an injured passenger and the parents of another passenger killed in an automobile collision each recov-

---

are inconsistent with this Act" as of September 1, 1974. Act 168, *supra,* § 6. The minimum requirement of HRS § 287-7 was thus rendered inoperative and minimum coverage was thereafter governed by HRS § 294-10(a)(1). In 1982 § 287-7 was amended to delete the amount of minimum coverage provided for therein and to refer directly to "not less than the liability coverages stated in section 294-10(a)."

ered damages from the tortfeasor's insurance company in an amount less than the minimum statutory amount required for uninsured motorist policies. They brought suit against their own insurance companies, seeking to recover the maximum coverage under their uninsured motorist provisions. In arriving at the holding stated above, the court held the real issue to be whether the tortfeasor was operating an "uninsured motor vehicle" under the pertinent statute, HRS § 431-448. *Id.* 57 Haw. at 13, 547 P.2d at 1353. The statutory provisions were held to be controlling, not the policy provisions.

The court noted that the statute is remedial and a literal application of the statutory term "uninsured motor vehicles" would be inconsistent with the legislative policy embodied in the statutory scheme. As the court stated:

The avowed purpose of the statute is to encourage self-protection against the financially irresponsible motorist through *voluntary insurance.* To make this realistically possible, it requires liability insurance companies to offer their clients this protection in at least the minimum amounts established by the financial responsibility law. The policy required under the financial responsibility law is for the protection of the public generally, while uninsured motorist insurance is for individuals who have foresight to protect themselves against the financially irresponsible motorist. The statute was clearly designed to enable the purchaser of the latter type of insurance to assure himself and members of his household of not less than the minimum protection provided for the general public in the financial responsibility law. The uninsured motorist policy is personal to the insured. This is what he bargained for, and one which he was encouraged to purchase by the legislature.

The statute under consideration must be liberally construed in accordance with its remedial purposes and consistent with the legislative intent. Accordingly, we hold that where the tortfeasor's automobile liability insurance is inadequate to provide compensation to the injured policyholder of an uninsured motorist policy, for at least the minimum amounts specified by the financial responsibility law, the tortfeasor is, as to that policyholder, "uninsured"

to the extent of the insufficiency for the purposes of the statute. *Porter v. Empire Fire and Marine Insurance Company, supra; Hanlon v. Buckeye Union Insurance Co.,* 73 Ohio Op. 2d 267, 324 N.E.2d 598 (C.P. 1975). A contrary finding would tend to subvert the statutory scheme designed to protect innocent victims of the financially irresponsible driver, and render the uninsured motorist statute in these cases ineffective. [Emphasis in original.]

*Id.* 57 Haw. at 15-16, 547 P.2d at 1354.

We think the rationale and holding of *Palisbo* are applicable in the instant case. Here, we have two injured claimants: Mr. Yamamoto seeking recovery for his personal injuries, and Mrs. Yamamoto seeking recovery for loss of consortium. If the Yamamotos can prove that each of them is entitled to some recovery and that their combined entitlement exceeds the minimum amount required of Makuaole by the financial responsibility law, then Makuaole is deemed uninsured as to both. *Palisbo v. Hawaiian Insurance & Guaranty Co., supra.*

We hold that Mrs. Yamamoto's claim is sufficient to make her an injured party within the purview of *Palisbo.*[6] We realize that loss of consortium is a derivative claim arising from the loss of services, companionship, society, and conjugal benefits caused by injuries which were negligently or wrongfully inflicted upon one's spouse. 41 Am. Jur. 2d *Husband & Wife* § 450 (1968); *Towse v. State,* 64 Haw. 624, 647 P.2d 696 (1982). However, it is only derivative in the sense that it does not arise unless one's spouse has sustained a personal injury. The loss of consortium claim is a claim for damages independent and separate from the spouse's claim for damages.[7] *Norwest v.*

---

[6] In *Palisbo,* plaintiffs Michael M. Ramos and Carol T. Ramos, the parents of Neal Ramos, filed suit for damages arising from the death of their son. Their claim was a derivative action and was allowed to go forward.

[7] Although an "independent" consortium claim would be barred where the victim's initial claim of injury cannot be maintained, *Towse v. State, supra,* an action would still lie where the husband has died during the pendency of the action, *see Nishi v. Hartwell,* 52 Haw. 188, 473 P.2d 116, *reh'g denied,* 52 Haw. 296 (1970), or where the husband chooses not to bring any personal injury action against the alleged tortfeasor, *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 157 N.W.2d 595 (1968). Query

*Presbyterian Intercommunity Hospital,* 52 Or. App. 853, 631 P.2d 1377 (1981); *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 157 N.W.2d 595 (1968).

From the answers to interrogatories filed by Mr. Yamamoto[8] on September 5, 1979, we note that his automobile was completely demolished, he suffered injuries to his heart, lung, ribs, shoulder, and left arm, incurred hospital expenses of $6,491.50, and was then suffering continued pains in his chest and arm. In addition, Mr. Yamamoto was unable to work from December 30, 1976 to January 4, 1979 and had suffered lost wages of approximately $20,000 per year at the time of the interrogatories. Furthermore, he apparently sustained a permanent disability which precluded him from returning to work. The medical report filed with Mr. Yamamoto's supplemental answers to interrogatories indicates such extensive and serious injuries that intensive care was required to prevent his demise. The evidence in the record, when viewed in the light most favorable to Mr. Yamamoto, indicates that Mr. Yamamoto's recovery would have exceeded $25,000, the amount of Makuaole's insurance policy. The evidence viewed in the light most favorable to Mrs. Yamamoto's claim also indicates that she would have recovered something on her claim.[9]

Under these circumstances, assuming that Mrs. Yamamoto would recover at least one dollar, Makuaole's $25,000 policy is not adequate to compensate both Mr. Yamamoto and Mrs. Yamamoto for at least the minimum amount required by the financial responsibility law. Therefore, Makuaole, pursuant to the *Palisbo* decision, is deemed an uninsured motorist as to

whether our "Married Women's Statutes," HRS chapter 537, would allow a spouse to pursue a loss of consortium claim by an independent suit. *Cf. Peters v. Peters,* 63 Haw. 653, 634 P.2d 586 (1981).

[8] On appeal, the reviewing court may examine the entire record for the presence of any issue of material fact. *Costa v. Able Distributors, supra; Ottensmeyer v. Baskin, supra.*

[9] In her answers to Premier's interrogatories filed on September 5, 1979, Mrs. Yamamoto stated that she had suffered not only from a loss of her husband's services but also from emotional distress caused by the accident and the resultant injuries to her husband. She also stated that she had to provide additional care for Mr. Yamamoto.

both Mr. and Mrs. Yamamoto and they may look to their own policy for further recovery.

With respect to the maximum amount which the Yamamotos may recover, the *Palisbo* court limited the amounts recoverable by the injured parties from their own uninsured motorist policies and the tortfeasor's policy to the minimum amount specified in the financial responsibility law. The court made it clear, however, that where there was a contractual agreement between the insurance company and the policyholder for coverage in excess of the minimum amount specified by the financial responsibility law, recovery of the greater amount would follow, although it did not find such an agreement in that case, because the plaintiffs' policies were also for the statutory minimum.

> The plaintiffs contend, however, that they are entitled to the full face values of their respective policies, in addition to the amounts they have already received under the tortfeasor's policy. We disagree. Recovery by the plaintiffs under both the tortfeasor's policy and their respective uninsured motorist policies is limited to the minimum amounts specified in the financial responsibility law. *Allstate Insurance Company v. Pesqueria,* 19 Ariz. App. 528, 508 P.2d 1172 (1973). Coverage in excess of those minimum amounts must be the direct result of contractual arrangements between the parties. There are no such arrangements here. The policies before us were issued in conformity with, and as a mandatory consequence of the statute. As such, they are susceptible to the same interpretation.

*Palisbo v. Hawaiian Insurance & Guaranty Co.,* 57 Haw. at 16, 547 P.2d at 1354-55.

Although dicta, that statement by the court presaged the holding in *Morgan, supra.* As we have previously discussed, the court in *Morgan* held that a single liability insurance policy covering two or more vehicles creates separate uninsured motorist coverage for each vehicle. The court found that the parties to the policy had contracted for coverage in excess of the statutory minimum when that policy covered two or more vehicles.

In the instant case, once Makuaole is deemed uninsured pursuant to *Palisbo,* the Yamamotos may recover not only on

their insurance policy to the extent of the insufficiency between Makuaole's liability insurance and the minimum amounts specified by the financial responsibility law, but, since the Yamamotos' contract with Premier is interpreted under *Morgan* as providing coverage in excess of the minimum statutory amounts, they may also recover up to their policy limit of $75,000 less the $25,000 recovery from Makuaole's policy.[10]

Thus, we conclude that there was a discernible theory of law under which the Yamamotos could have recovered and the lower court erred in granting summary judgment. We do not deem it necessary, in our view of the case, to discuss the Yamamotos' argument that Makuaole should be considered uninsured because his insurance coverage does not cover all of their losses and is less than the total coverage provided by the uninsured motorist provision for their three automobiles.

Reversed and remanded.

*Richard F. Dvonch (Vernon T. Tashima* and *Roy Y. Nihei* with him on the opening brief) for plaintiffs-appellants.

*Colbert M. Matsumoto (Wallace S. Fujiyama, James E. Duffy, Jr.,* and *James J. Stone* on the brief; *Fujiyama, Duffy & Fujiyama* of counsel) for defendant-appellee.

---

[10] Further support for this proposition was provided in *Palisbo* where the court stated:

> We hold only that where a tortfeasor is underinsured as to a particular policyholder of uninsured motorist insurance, the latter is entitled to recover under his policy the difference between the amount he receives from the tortfeasor's insurance and the face value of his uninsured motorist policy. This, in our opinion, is best expressive of the legislative intent.

*Palisbo, supra,* 57 Haw. at 17, 547 P.2d at 1355.