FLORENCE H. DOI and DONALD I. DOI, Plaintiffs-Appellees, *v.* HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., Defendant-Appellant

NO. 11118

(CIVIL NO. 85-0791)

OCTOBER 27, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this appeal Defendant Hawaiian Insurance & Guaranty Co., Ltd. (HIG) contends that the lower court erred in awarding summary judgment to Plaintiffs Florence H. Doi (Florence) and her husband Donald I. Doi (Donald) (when appropriate hereinafter Florence and Donald will be referred to as Plaintiffs), and denying its motion for summary judgment. We vacate the judgment and remand with instructions to enter judgment for HIG.

On July 10, 1980, Florence was driving one of four automobiles owned by Plaintiffs and insured by HIG under one automobile insurance policy providing uninsured motorist coverage in the amount of $25,000 per automobile. Florence was seriously injured in a collision with another automobile driven by Aquamarine Pahio (Pahio). Pahio's automobile was covered by an insurance policy providing maximum liability coverage of $25,000 for all damages that she was legally obli-

gated to pay for bodily injury sustained by any one person. Pahio's policy met the requirements of Hawaii Revised Statutes (HRS) § 294-10(a)(1) (1976) (amended 1980).[1] Thus, Pahio's policy also complied with HRS § 287-7 (1985),[2] the Motor Vehicle Safety Responsibility Law.[3] On October 18, 1982, Florence sued Pahio for damages arising

---

[1]At the time of injury and suit, Hawaii Revised Statutes (HRS) § 294-10(a)(1) provided in pertinent part:

Required policy coverage. (a) In order to be a no-fault policy, an insurance policy covering a motor vehicle shall provide, in addition to the coverage specified in section 294-4, insurance to pay on behalf of the owner or any operator of the insured motor vehicle using the motor vehicle with the express or implied permission of the named insured, sums which the owner or operator may legally be obligated to pay for injury, death, * * * which arise out of the ownership, operation, maintenance, or use of the motor vehicle:

(1) Liability coverage of not less than $25,000 for all damages arising out of accidental harm sustained by any one person as a result of any one accident applicable to each person sustaining accidental harm arising out of ownership, maintenance, use, loading, or unloading, of the insured vehicle[.]

The words "using the motor vehicle with the express or implied permission of the named insured" were added to the opening paragraph of subsection (a) by Act 103, § 1, 1980 Haw. Sess. Laws 153.

The minimum no-fault coverage requirement for accidental harm was raised from $25,000 to $35,000 in 1985. Act 181, § 3, 1985 Haw. Sess. Laws 309, 310.

[2]HRS § 287-7 (1985) provides in pertinent part:

Exceptions. Sections 287-5 and 287-6 shall not apply under the conditions stated in section 287-8 nor:

(1) To the driver or registered owner if the registered owner had in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident[.]

* * *

No automobile liability policy or bond shall be effective under this section unless issued by an insurance company or surety company authorized to do business in the State, except that if the motor vehicle is registered elsewhere than in this State at the effective date of the policy or bond, or the most recent renewal thereof, the policy or bond shall not be effective under this section unless the insurance company or surety company, if not authorized to do business in the State, executes a power of attorney authorizing the insurance commissioner to accept service on its behalf of notice of process in any action upon the policy or bond arising out of the action; provided every such policy or bond is subject to a limit, exclusive of interest and costs, of not less than the liability coverages stated in section 294-10(a).

[3]The Motor Vehicle Safety Responsibility Law requires every owner or driver of an automobile which has been involved in an accident in which property damage exceeds $300 to post with the administrator of the act security sufficient to pay for any judgment for damages resulting from the accident, unless he or she has been released from liability, has been adjudicated not liable, or has executed an agreement to pay for all injuries or

from injuries she suffered in the collision (Civil No. 73868). Donald joined the suit, claiming loss of consortium.

Thereafter, claiming that the damages flowing from Florence's injuries would exceed Pahio's $25,000 policy limit, and, consequently, Donald's loss of consortium claim would be uncompensated, Plaintiffs demanded that HIG indemnify them for their damages in excess of $25,000, under the uninsured motorist provision of their policy.[4] They asserted that their policy covered them to the extent of $25,000 for each of their automobiles and they were entitled to $100,000 less Pahio's liability coverage, under *Yamamoto v. Premier Insurance Co.*, 4 Haw. App. 429, 668 P.2d 42 (1983). The record does not indicate any response from HIG.

After a bench trial in Civil No. 73868, Florence and Donald were awarded damages as follows:

### FLORENCE

| | | |
|---|---|---|
| medical/rehabilitative costs | | $ 24,610.58 |
| lost wages | | 22,203.28 |
| general damages | | 65,000.00 |
| | total | $111,813.86 |

---

damage. HRS §§ 287-5 and -6. If those requirements are not met, the owner's or driver's license to operate a motor vehicle is subject to suspension. HRS § 287-6. However, under § 287-7, where the automobile is covered by an insurance policy or bond meeting the requirements of § 294-10(a), the provisions of §§ 287-5 and -6 are inapplicable.

[4] At the time of Florence's accident, HRS § 431-448 (1976), the statute relating to uninsured motorist coverage, read as follows:

Automobile liability; coverage for damage by uninsured motor vehicle. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage in writing.

Act 181, § 4, 1985 Haw. Sess. Laws 309, 311, added subsections (b) and (c) to the statute, relating to "underinsured motorists."

loss of consortium                                    $ 15,000.00

Plaintiffs renewed their demand on HIG for uninsured motorist coverage. The demand was rejected and on February 27, 1985, Plaintiffs filed the instant action for a declaratory judgment establishing the rights, duties, and liabilities of the parties under the insurance contract, and for compensatory and punitive damages.

Both parties filed motions for summary judgment on the issue of coverage. Plaintiffs argued that under *Yamamoto* they were entitled to separate uninsured motorist coverage for each of their covered automobiles less than $25,000 recovered from Pahio. HIG disputed coverage on the basis that (1) Pahio was not uninsured, and (2) *Yamamoto* was contrary to our statutes regarding automobile insurance coverage for bodily injury and uninsured motorists, and contrary to *Palisbo v. Hawaiian Insurance & Guaranty Co.,* 57 Haw. 10, 547 P.2d 1350 (1976). The trial court denied HIG's motion and granted Plaintiffs' motion, holding Plaintiffs were entitled to uninsured motorist coverage pursuant to *Yamamoto.* HIG's motion for reconsideration was denied, and a Rule 54(b), Hawaii Rules of Civil Procedure (1981), certification was entered on December 3, 1985. HIG appeals, contending that it should have been awarded summary judgment rather than Plaintiffs.

The facts are undisputed and the only question is which party was entitled to summary judgment as a matter of law. *Washington v. Fireman's Fund Insurance Cos.,* 68 Haw. ___, 708 P.2d 129 (1985).

I.

Plaintiff's policy required HIG to pay all sums which they were legally entitled to recover as damages from the owner or operator of an "uninsured highway vehicle." The coverage was offered by HIG and acquired by Plaintiffs pursuant to HRS § 431-448 (1976). (See footnote 4.) The statute does not define "uninsured motorist;" however, Plaintiffs' policy defines an "uninsured highway vehicle" as follows:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured highway vehicle is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such

vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or is or becomes insolvent;

\* \* \*

but the term "uninsured highway vehicle" shall not include:
(i) an insured highway vehicle[.]

HIG argues that since Pahio's liability coverage satisfied the requirements of HRS § 294-10(a) and, therefore, the requirements of the financial responsibility law, hers was not an uninsured highway vehicle and Pahio was not an uninsured motorist under Plaintiffs' policy.

Plaintiffs do not argue that Pahio's liability coverage does not meet the statutory requirements. However, citing *Yamamoto v. Premier Insurance Co., supra,* they argue that Pahio was "uninsured" because Donald's independent loss of consortium judgment has not been satisfied, and cannot be satisfied, because Florence's judgment exceeded the limits of Pahio's liability insurance coverage. In essence, Plaintiffs argue that Pahio was "underinsured" pursuant to *Yamamoto.* HIG argues that *Yamamoto* was erroneously decided. The dispute requires us to re-examine *Yamamoto.*

II.

In *Yamamoto,* Mrs. Yamamoto joined in her husband's suit for damages for personal injuries arising out of an automobile accident and sought compensation for her loss of consortium. The action was against the tortfeasor and Premier Insurance Co., the Yamamotos' insurer, whom the Yamamotos alleged wrongfully denied them uninsured motorist coverage benefits. We held that under *Palisbo v. Hawaiian Insurance and Guaranty Co., supra,*[5] there was a "discernible theory" by

---

[5]In *Palisbo* the amount of damages recovered from the tortfeasor by the parents of a young man who was killed in an automobile accident was less than the minimum coverage required under the financial responsibility law at the time. In an action against their insurance company on their uninsured motorist coverage, the decedent's parents were allowed to recover the difference between the amount recovered from the tortfeasor and the maximum amount of their uninsured motorist coverage. The supreme court held that where the tortfeasor's automobile liability insurance is inadequate to provide compen-

which Mrs. Yamamoto could recover under her uninsured motorist coverage and that summary judgment in favor of Premier was improvidently granted.

We held in *Yamamoto* that Mrs. Yamamoto's loss of consortium claim, although derived from Mr. Yamamoto's personal injuries, "is a claim for damages independent and separate from the spouse's claim for damages." *Id.* 4 Haw. App. at 435, 668 P.2d at 48. Based on *Palisbo,* we reasoned that, since both Mr. and Mrs. Yamamoto had independent claims against the tortfeasor, if their combined entitlement exceeded the minimum coverage required to be maintained by the tortfeasor under the financial responsibility law, then the tortfeasor was uninsured as to both Mr. and Mrs. Yamamoto and they were entitled to recover against their insurer under their uninsured motorist coverage. *Yamamoto,* 4 Haw. App. at 435, 668 P.2d at 48.

HIG contends that *Yamamoto* was erroneously decided, because we did not consider the effect of HRS chapter 294 on derivative claims such as loss of consortium. We note that the arguments made by HIG here were not made by Premier in *Yamamoto* and the statute's effect on derivative claims or on *Palisbo* was not considered by us.

HIG argues that (1) Pahio's policy met the minimum requirements of HRS § 294-10(a)(1) and provided coverage for "all damages" arising out of the "accidental harm" suffered by Florence; and (2) since Donald did not suffer accidental harm, he had no claim for damages except one, such as consortium, derived from Florence's accidental harm. HIG concludes, therefore, that the words "all damages" in HRS § 294-10(a)(1) must be held to include damages suffered by both the injured spouse and the deprived spouse. Since Pahio's policy provided the requisite statutory coverage, HIG asserts that she cannot be considered

---

sation to the injured policyholder of an uninsured motorist policy, for at least the minimum amounts specified by the financial responsibility law, the tortfeasor is, as to that policyholder, "uninsured" to the extent of the insufficiency for the purposes of the statute.

*Id.* 57 Haw. at 15, 547 P.2d at 1354.

We do not reach HIG's argument that *Palisbo* is no longer relevant since § 294-10(a) now requires minimum liability coverage for "each person sustaining accidental harm" in *each accident,* and each injured person can recover damages at least to the statutory minimum. Thus, there can be no uninsured motorist situation as there was in *Palisbo* where, under the "per accident" limitation then extant the injured persons were awarded only a share of the total of the per accident limitation that was available.

uninsured, even though Donald cannot recover his damages for loss of consortium. HIG's argument requires us to examine the status of a loss of consortium claim under chapter 294.

### III.

### A.

HRS § 294-6(a) sets forth the limitation on tort liability, which is the bedrock of chapter 294. At the time of the collision in the instant case, § 294-6(a) provided in pertinent part:

Abolition of tort liability. (a) Tort liability of the owner, operator, or user of an insured motor vehicle, or the operator or user of an uninsured motor vehicle who operates or uses such vehicle without reason to believe it to be an uninsured motor vehicle, with respect to accidental harm arising from motor vehicle accidents occurring in this State, is abolished, except as to the following persons or their personal representatives, or legal guardians, and in the following circumstances:

(1) Death occurs to such person in such a motor vehicle accident; or injury occurs to such person which consists, in whole or in part, in a significant permanent loss of use of a part or function of the body; or injury occurs to such person which consists of a permanent and serious disfigurement which results in subjection of the injured person to mental or emotional suffering;

(2) Injury occurs to such person in a motor vehicle accident in which the amount paid or accrued exceeds the medical-rehabilitative limit established in section 294-10(b) for expenses provided in section 294-2(10)(A) and (B);

(3) Injury occurs to such person in such an accident and as a result of such injury the aggregate limit of no-fault benefits outlined in section 294-2(10) payable to such person are exhausted.

Act 166, § 4, 1977 Haw. Sess. Laws 333, 335.

HRS § 294-6(a) does not specifically abolish a loss of consortium claim. It clearly abolishes tort liability "with respect to accidental harm arising from motor vehicle accidents" except in the instances set forth there. The plain language of the statute would seem to abolish derivative claims where the person suffering "accidental harm" does not meet the threshold requirements, since they can only arise from the accidental

harm suffered by the injured person. The effect of § 294-6 on derivative claims is unclear and the question has not been addressed by our appellate courts. However, it has been addressed by courts of other jurisdictions, and we look to those cases for guidance.

B.

Starting with the proposition that no-fault automobile insurance statutes are in derogation of common-law principles of tort liability, other jurisdictions have narrowly construed such statutes and held that they should not be held to have abolished the common law claim for loss of consortium. However, those cases hold that the no-fault laws require that, loss of consortium claims, since they remain derivative, can only be asserted in accordance with the procedures governing the "source action," i.e., the action of the injured spouse. Thus, in *Barker v. Scott,* 81 Misc. 2d 414, 365 N.Y.S.2d 756 (1975), the court said:

> Such derivative causes of action as those in negligence arising from the husband-wife and parent-child relationships are firmly grounded in law and there appears no basis whatsoever for any conclusion that by the enactment of article 18 they have been abrogated by implication. Indeed, *the only basis for such an implication* would have to be the fact that the new act contains no explicit reference to derivative causes of action; but these are so deeply rooted in the law that the more reasonable implication to be drawn from the omission is that they are left untouched, *except* as the new act may alter the substantive and procedural aspects of the main or source cause of action from which the husband's or parent's action is derived and upon which the viability of the husband's or parent's cause of action is completely dependent. Thus, as the existence and survival of the derivative action must be determined by reference to the source action, so the procedural status of the derivative action must be tested by that of the source action, if the dictates of orderly procedure are to be followed and the duplicative steps and effort and at least minor confusion involved in pursuing common-law damages in the source action and first-party benefits in respect of the derivative claim are to be avoided.

*Id.* 81 Misc. 2d at 415-16, 365 N.Y.S.2d at 758 (emphasis in original).

In *Cotton v. Minter,* 469 F. Supp. 199 (E.D. Mich. 1979), the court noted that Michigan's no-fault law was developed to alleviate problems

in the automobile tort system consisting of "long payment delays, an inequitable payment structure, high legal costs and an overburdened court system."[6] *Id.* at 200-01. In considering whether the Michigan statute abolished consortium claims, the court construed the statute with regard to its purpose and stated:

> The purpose of no-fault will be as well served by declining to abolish consortium as by abolishing it. No-fault's purpose was to litigate only cases where there are serious elements of noneconomic loss and bar those where such losses are small. Abolishing consortium would exclude no cases, and allowing it would not open the door to additional cases. In each case the test whether suit may be brought is: Has there been "injury" within the meaning of § 500.3135(1)?

*Id.* at 201.

The following cases have also held that the right to assert the loss of consor' ım claim remains derivative and may only be asserted where the injured spouse has met the threshold requirement of the statute: *Faulkner v. Allstate Ins. Co.,* 367 So.2d 214 (Fla. 1979); *McDaniel v. Prysi,* 432 So.2d 174 (Fla. Dist. Ct. App. 1983); *Rusinek v. Schultz, Snyder & Stelle Lumber Co.,* 411 Mich. 502, 309 N.W.2d 163 (1981); *Zagari v. Gralka,* 264 Pa. Super. 239, 399 A.2d 755 (1979).

### C.

Our supreme court, too, has held that statutes in derogation of the common law must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies. *Burns International Security Services, Inc. v. Department of Transportation,* 66 Haw. 607, 671 P.2d 446 (1983).

In enacting HRS chapter 294, the legislative purpose was to reform the existing system of reparations for damages arising from motor vehicle accidents in order

> to provide motor vehicle accident victims assured, adequate and prompt reparation for certain economic losses without regard to

---

[6]These are essentially the same problems our legislature sought to address in chapter 294.

fault. The clear objectives of the law are to: (1) institute insurance reform in order to (a) expedite the settling of all claims, (b) create a system of reparations for injuries and loss arising from motor vehicle accidents, (c) compensate these damages without regard to fault, and (d) modify tort liability for these accidents; and (2) to reduce the cost of motor vehicle insurance by establishing a uniform system of motor vehicle insurance. House Joint Stand. Comm. Rep. No. 187, reprinted in 1973 House Journal at 836. *See also* Act 245, § 1, 1983 Haw. Sess. Laws 518, 519; Sen. Stand. Comm. Rep. No. 402, reprinted in 1973 Senate Journal at 817; Conf. Comm. Rep. No. 13, reprinted in 1973 House Journal at 1219; Conf. Comm. Rep. No. 4, reprinted in 1973 Senate Journal at 635.

\* \* \*

Under the Hawaii No-Fault Law an accident victim may not maintain the traditional negligence tort action against the alleged wrongdoer except as to certain "serious" instances specified under HRS § 294-6. *See* Act 245, § 1, 1983 Haw. Sess. Laws 518, 519; Sen. Stand. Comm. Rep. No. 402, reprinted in 1973 Senate Journal at 817, 818; 1973 House Journal 395-419, 697-703.

*Parker v. Nakaoka,* 68 Haw. ___, ___, 722 P.2d 1028, 1030 (1986).

In earlier cases, the supreme court found that the intent of chapter 294 was to establish a reparations system for injuries arising from automobile accidents and "limit tort liability for [automobile] accidents," *Washington v. Fireman's Fund Ins. Cos.,* 68 Haw. at ___, 708 P.2d at 134 (1985), and to partially abolish tort liability for such accidents, *Barcena v. Hawaiian Insurance and Guaranty Co., Ltd.,* 67 Haw. 97, 102, 678 P.2d 1082, 1086 (1984). In *Weigand v. Allstate Ins. Co.,* 68 Haw. ___, at ___, 706 P.2d 16, at 19 (1985), the supreme court stated:

The no-fault law has been analogized to the workers' compensation law. *Joshua v. MTL,* 65 Hawaii 623, 631, 656 P.2d 736, 741 (1982). As with the workers' compensation law, the no-fault law represents a socially enforced bargain where both parties give up some rights in exchange for other benefits. *See Hun v. Center Properties,* 63 Hawaii 273, 276, 626 P.2d 182, 185 (1981). *The injured party relinquishes the right to sue for large amounts of general damages[.]* [Emphasis added.]

We perceive no clear legislative intent or purpose in chapter 294 to supersede the common law and abolish derivative claims such as loss of

consortium arising from bodily injuries suffered by one's spouse in an automobile accident. Therefore, derivative claims resulting from injuries arising from automobile accidents are not abolished by HRS § 294-6. However, the assertion of such claims must meet the threshold requirements of § 294-6. It follows that such derivative claims are not independent to the extent that they may be asserted without regard to the nature or extent of the injuries to the person suffering accidental harm. Our decision in *Yamamoto* caused confusion by emphasizing the independent nature of the loss of consortium claim. We reconsider *Yamamoto* now in the light of the above discussion.

## IV.

In *Yamamoto* we held that a loss of consortium claim is an independent claim. Although the modern trend of tort law is to consider loss of consortium as an injury to the deprived spouse giving rise to a separate and independent action for damages, *see generally,* Prosser, *Torts* § 125 (5th ed. 1984); *see also* Annot., 36 A.L.R. 3d 900 (1971); *Lantis v. Condon,* 95 Cal. App. 3d 152, 157 Cal. Rptr. 22 (1979); *Christie v. Maxwell,* 40 Wash. App. 40, 696 P.2d 1256 (1985), nevertheless, it remains a derivative claim dependent for its viability upon the personal injury to one's spouse. Certainly in assessing damages for loss of consortium the deprived spouse's claim is considered separately, although necessarily with reference to the injured spouse's injuries.

We did not hold in *Yamamoto* that Mrs. Yamamoto's consortium claim was independent in the sense that she could bring suit for damages even if Mr. Yamamoto could not. We did hold, however, that her claim was independent for purposes of determining whether her recovery would affect the status of the tortfeasor as an uninsured motorist. However, as stated earlier, the interrelation among HRS §§ 431-448, 287-7, 294-6(a), -10 and the common law right to sue for loss of consortium did not enter into our decision in *Yamamoto*. On the basis of that interrelation, we now overrule *Yamamoto*.

Under § 287-7, an automobile insurance liability policy must provide coverage for "all damages arising out of accidental harm sustained by any one person as a result of any one accident," as required by § 294-10(a)(1). Since a loss of consortium claim is derivative only, such damages as may have been sustained by the deprived spouse necessarily arise out of the injury to the injured spouse.

Consequently, we construe the phrase "all damages" in § 294-10(a)(1) to include loss of consortium damages, and hold that where a tortfeasor's automobile liability insurance policy meets the requirements of § 294-10(a)(1), the tortfeasor is not an uninsured motorist, notwithstanding the fact that the spouse of a person injured in an automobile accident is unable to recover his or her loss of consortium damages from the tortfeasor's policy because the injured spouse's damages exceed the limits of the tortfeasor's policy. In such circumstances, the injured parties' automobile insurer is not liable to compensate them under their uninsured motorist coverage.[7] To hold that loss of consortium damages do not arise from the injured person's accidental harm would result either in abolishing such claims or creating a cause of action independent of the threshold requirements. Neither result would be in keeping with the legislative intent expressed in chapter 294.

In the instant case, Pahio's policy met the statutory requirements by providing payments for "all damages." The fact that the extent of Florence's damages deprived Donald of recompense for his damages from Pahio's policy does not make Pahio "uninsured." Consequently, HIG was not required to provide payment to Plaintiffs under their uninsured motorist coverage.

Judgment vacated and the matter remanded with instructions to enter judgment for HIG.

*John T. Komeiji* (*Bert T. Kobayashi* and *Randall Y. Yamamoto* with him on the briefs; *Kobayashi, Watanabe, Sugita & Kawashima* of counsel) for defendant-appellant.

*Walter K. Horie* for plaintiffs-appellees.

---

[7]Where the deprived spouse has been awarded damages for loss of consortium, as was Donald in this case, the deprived spouse may, of course, seek to recover them directly from the tortfeasor.