**Allan Ryo KUNIMOTO, Plaintiff,**

v.

**Jay M. FIDELL, individually and as state-court-appointed receiver; Bank of Hawaii; Carlsmith, Ball, Wichman, Case & Ichiki, a Hawaii partnership including professional law corporation fka Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki; James R. Starshak; John Candon, individually and as bankruptcy-court-appointed trustee, Defendants—Appellees**

**Gregg Young, Real-party-in-interest—Appellant**

**Allan Ryo Kunimoto, Plaintiff**

v.

**Jay M. Fidell, individually and as state-court-appointed receiver, Defendant**

**and**

**Bank of Hawaii; John Candon, individually and as bankruptcy-court-appointed trustee; Defendants—Appellees**

**Gary Victor Dubin, Real-party-in-interest—Appellant**

No. 00–15157, 00–15202.
D.C. No. CV–98–00453–DAE.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 2001.

Decided Nov. 20, 2001.

Before THOMPSON, O'SCANNLAIN and BERZON, Circuit Judges.

### MEMORANDUM *

The question before us on appeal is whether the district court judge abused its discretion in either the awarding of or the amount of Rule 11 sanctions. Because the parties are familiar with the facts of the case, we will not restate them here.

*The Complaint*

"Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir.1997). The district court found the complaint that appellants' filed on behalf of the Kunimotos to be both frivolous and "for the improper purpose of harassing and pressuring the Defendants to settle other pending litigation."

■ "Frivolous filings are those that are both baseless and made without a reasonable and competent inquiry." *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997) (quotation marks omitted). Not all of a complaint's claims must be frivolous for Rule 11 sanctions to be appropriate. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir.1991) (en banc).

■ The Kunimotos lacked standing to file the complaint because once in bankruptcy, a debtor's property rights, includ-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

ing legal causes of action, belong to the bankruptcy estate, under the supervision of the court-appointed trustee. *See* Bankruptcy Code 11 U.S.C. § 541(a); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707–09 (9th Cir.1986). All claims alleged on the Kunimotos' behalf originated either before the bankruptcy filing or during the Chapter 11 phase of Mr. Kunimoto's case, and therefore were part of the bankruptcy estate. Mrs. Kunimoto's claims were nearly all entirely derivative of Mr. Kunimoto's causes of action, and are therefore just as frivolous as his. That one or two of Mrs. Kunimoto's claims may not have been derivative on their face does not immunize her complaint from Rule 11 sanctions. *Townsend*, 929 F.2d at 1363.

We are unconvinced by appellants' arguments that their assertion of standing was colorable. Appellant Young posits that if debtor's claims were the property of the trustee, the trustee should have been substituted for the plaintiff. But here, the trustee is one of the *defendants* and so could not have been the plaintiff as well. Moreover, the trustee did not consent to any substitution, and his consent was highly unlikely in light of the history of this litigation.

Both appellants further argue for standing on the theory that because taxes are not dischargeable in bankruptcy, the trustee's alleged failure to pay taxes will cause the plaintiff personal harm in the form of tax liability. Appellants list in a string cite, with no discussion, five cases that supposedly support their novel argument.

Three of the five cases discuss an exception to the rule precluding standing by a bankruptcy debtor that clearly does not apply here: when a debtor disputes claims of creditors, standing is proper if the disallowance of the claims would create a surplus of assets to be returned to the debtor.

*Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assoc., Ltd.*, 992 F.2d 7, 10 (1st Cir.1993), *Silverman v. Leucadia, Inc.*, 37 B.R. 200, 201 (S.D.N.Y.1982), *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir. 1979). Plaintiff in this case did not seek to establish the invalidity of any creditors' claims, and so the "surplus" exception could not possibly apply.

The remaining two cases appellants cite allow debtor plaintiffs to sue trustees for breach of fiduciary duty, which indeed was one of the allegations in plaintiffs' complaints. *Yadkin Valley Bank & Trust Co. v. McGee*, 5 F.3d 750 (4th Cir.1993), does so with no discussion of the standing issue. Presumably, standing was not raised by the lawyers in that case or there was trustee consent to the suit.

*Reich v. Burke*, 54 B.R. 995, 1002 (Bankr.E.D.Mich.1985), which involved Chapter 7 bankruptcy rather than Chapter 11, begins its discussion by stating: "Although it is undeniable that a Chapter 7 trustee has the duty to preserve estate assets, *no case has been found in which it was held that the duty was owed to the debtor*" (emphasis added) (citations omitted). The *Reich* opinion finds standing nonetheless. The debtor in that case claimed that the trustee negligently allowed the destruction of a property in which debtor had maintained an exemption, a partial property right. The court reasoned that because of the exemption, the trustee's alleged negligence would cause "a loss peculiar to" the debtor. There is no such exemption in this case. Moreover, *Reich* was brought in the bankruptcy court, not in the district court. Even if such a suit were otherwise viable in the district court, it would require permission by the bankruptcy court, *see In re Kashani*, 190 B.R. 875, 884 (B.A.P. 9th Cir.1995), and none was requested or obtained. Finally, in this case the trustee

was only *one* of the defendants, and the alleged duty to preserve the estate cannot possibly support standing against the other defendants, such as the bank.

Appellants also argue that Mrs. Kunimoto's derivative claims were not frivolous, citing *Brown v. KFC Nat'l Management Company,* 82 Hawai'i 226, 921 P.2d 146 (Haw.1996). Though *Brown* found loss of consortium claims to be independent from their parent claims in the sense that they can be litigated in different forums, *Brown* made clear that the spouse's consortium claim is "derivative in the sense that [it does] not arise unless one's spouse has sustained a personal injury." *Brown* at 161 (quoting *Yamamoto v. Premier Ins. Co.,* 4 Haw.App. 429, 668 P.2d 42, 48 (Haw. Ct.App.1983)). Since Mr. Kunimoto could show no personal injury, Mrs. Kunimoto's spousal claims were frivolous.

In sum, the district court did not abuse its discretion in finding that the complaint was "both baseless and made without a reasonable and competent inquiry." *Townsend,* 929 F.2d at 1362.

*Improper Purpose*

The district court had ample justification for finding that the complaints were filed for the improper purpose "of harassing and pressuring the Defendants to settle other pending litigation." The complaints largely repeated claims that had been settled in state court. Also, appellants' parade of motions for reconsideration, for striking orders, and for disqualifying the judge and the special master cumulatively suggest a strategy of harassment.

*Safe Harbor*

■ Appellants claim that they offered to dismiss the Kunimotos' complaints without prejudice within the 21 day safe harbor period, and that appellees ignored the offer. But the district court was within its discretion in finding that appellants' alleged offers were not sincere proposals but rather disingenuous attempts to force settlement. Appellants proposed only a withdrawal *without* prejudice; they then failed to file any withdrawal motion with the court or send any proposed withdrawal documents to the bank, though they continued to speak equivocally about the possibility of withdrawing after the safe harbor period ended. In addition, the alleged offer was made only to the bank and therefore has no bearing on the motion for sanctions brought by the trustee.

*The Amount of the Penalty*

■ The district court awarded attorneys' fees "after careful consideration" and in the hope of putting "an end to [appellants'] continued misuse of the federal court system." *Gaskell v. Weir,* 10 F.3d 626, 629 (9th Cir.1993), stated that "where the original complaint is the improper pleading, all attorney's fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions." Still, we take note that the award in this case is quite large for a Rule 11 penalty.

■ Appellants make five arguments in contending that the fee award was excessive. First, they argue without support that fees should be limited to time spent specifically on the standing issue because it was lack of standing that was the basis for dismissal of the case. Rule 11(c)(1)(A) simply states that, "If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed.R.Civ.P. 11(c)(1)(A). In this case, the district court carefully explained why it found attorney's fees warranted for all the pleadings in the case, not only those opposing standing.

Second, appellants argue that fees should not be awarded for appellees' ef-

forts in carrying out the motions for sanctions. But "the December 1, 1993 amendment to Rule 11 specifically allows a district court to include the costs associated with sanctions proceedings." *Margolis v. Ryan*, 140 F.3d 850, 854 (9th Cir. 1998).

Third, appellants argue that the bank wrongly bundled, or "lumped" different tasks under single blocks of time. Aware of this concern, the special master conducted a line-by-line in camera comparison of the bank's redacted and unredacted entries. The special master found that for the most part the unredacted records showed "contemporaneous records that were transcribed on the same day as the services were performed." Wherever there was doubt, the special master reduced the fees accordingly.

Fourth, appellants argue that the special master did not consider their evidence of inability to pay. The special master discussed appellants' evidence in its ruling, finding the declarations filed not probative because they failed to account for appellants' assets and liabilities.

Finally, appellants argue that they were denied adequate due process in the fee determination. In fact, the appointment of a special master and the evidentiary hearings comprised more process than what was required. *See, e.g., Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997).

In sum, we find that despite the magnitude of the award, the special master's lengthy proceedings and thorough 36–page opinion substantiate that the award was within the discretion of the district court.

AFFIRMED.