**In Re: James F. WALKER, Debtor.**

**No. 03–32158–BKC–PGH.**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

June 20, 2006.

Robert A Angueira, Esq, Hollywood, for Eleanor C. Cole, Florida Precision Caliper Inc, Creditors.

Kevin C Gleason, Esq, Hollywood, for Robert S. Pettus, Creditor.

Mary Alice Gwynn, Esq, Delray Beach, for Eleanor C. Cole, Carl Shuhi, Creditors.

Bruce I Kravitz, Esq, West Palm Beach, for Eleanor C. Cole, Carl Shuhi, Creditors.

Theresa M Lemme, Esq, West Palm Beach, for Coronado Estates of Boynton Beach Homeowners Association, Inc., Creditor.

Thomas M Messana, Esq, Ft. Lauderdale, for Linda Walden, Interested Party.

Gary M Murphree, Esq, Miami, for Deborah Menotte, Ferrell Schultz PA, Creditors.

Arthur C Neiwirth, Esq, Ft. Lauderdale, for Eleanor C. Cole, Creditor.

Lisa M Pisciotta, Esq, Miami, for Susan Lundborg, Creditor.

Scott J Reit, Esq, Ft. Lauderdale, for Cat Cay Yacht Club Inc, David C. Hardin, Esq, Creditors.

Craig P Rieders, Esq, Miami, for Linda Walden, Interested Party.

Morgan Roger Rood, Esq, Ft. Lauderdale, for Michael J Satz, Interested Party.

Gary J Rotella, Esq, Ft. Lauderdale, for James F. Walker, Gary J Rotella & Associates PA, Gary J. Rotella, Creditors.

Carlos E. Sardi, Esq, Miami, for Linda Walden, Interested Party.

Carl Shuhi, c/o Bruce I Kravitz, West Palm Beach, for Carl Shuhi, Creditor.

Max G Soren, Esq, Miami, for Ferrell Law PA, Interested Party.

Alicia Trinley, Esq, West Palm Beach, for Alan R. Simon, Creditor.

Scott A Underwood, Esq, Fort Lauderdale, for Linda Walden, Interested Party.

John L Walsh, Esq, Ft. Lauderdale, for Patricia A Dzikowski, Trustee.

Jack F Weins, Esq, Boca Raton, for Mary A. Gwynn, Interested Party.

Aviva L Wernick, Esq, Miami, for Susan Lundborg, Creditor.

E Clayton Yates, Esq, Ft. Pierce, for Carol Ann Walker, Interested Party.

### MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART SUSAN LUNDBORG'S MOTION TO (1) QUASH SUBPOENA AND ENTER PROTECTIVE ORDER, AND FOR CONTEMPT AND SANCTIONS AGAINST DEBTOR AND HIS COUNSEL FOR VIOLATION OF THE MEDIATION ORDER; (2) DISMISS ALL SANCTIONS MOTIONS OF DEBTOR AND HIS COUNSEL AGAINST HER; AND (3) ENLARGE HER TIME TO COMPLETE THE RECORD AND ISSUES WITH RESPECT TO APPEALS AFFECTED BY DEBTOR'S SANCTION MOTIONS [C.P. 1317]

PAUL G. HYMAN, Bankruptcy Judge.

This matter came before the Court for hearing on April 17, 2006 and on May 26, 2006, upon Susan Lundborg's ("Lundborg") *Motion To: (1) Quash Subpoena And Enter Protective Order, And For Contempt And Sanctions Against Debtor And His Counsel For Violation Of The Mediation Order* ("Lundborg's Motion to Quash"); *(2) Dismiss All Sanctions Motions Of Debtor And His Counsel Against Her* ("Lundborg's Motion to Dismiss"); *and (3) Enlarge Her Time To Complete The Record And Issues With Respect To Appeals Affected By Debtor's Sanctions Motions* ("Lundborg's Motion to Enlarge Time") [C.P. 1317] (collectively the "Omnibus Motion")[1], and upon James F. Walker

---

1. C.P. 1317 is a three-part motion, the Court's reference to the Omnibus Motion is to the

("Debtor") and Debtor's Attorney, Gary J. Rotella, Esquire's ("Rotella") (collectively "Rotella") *Response* thereto [C.P. 1453] (the "Response").

## BACKGROUND

The matters before the Court relate to a series of sanctions motions in a case that has the dubious distinction of having been over-litigated. This case has also been distinguished by significant palpable acrimony between the parties and their attorneys.[2] Debtor filed for relief under Chapter 7 of the Bankruptcy Code on April 25, 2003. Debtor's Schedules show an insolvent estate with $101.00 in assets and $1,095,257.28 in liabilities. None of the scheduled liabilities was indicated by the Debtor to have been contingent, unliquidated, or disputed. On May 12, 2005, Lundborg timely filed Proof of Claim No. 5 ("Lundborg's Proof of Claim"), wherein she asserted claims against the estate for expenses incurred with respect to the real property known as Lot 32, North Cat Cay, Bahamas (the "Cat Cay Property").

The Omnibus Motion seeks dismissal of four sanctions motions[3] filed by Rotella (collectively "Rotella's Pending Sanctions Motions") against Lundborg and her counsel, Daniel Lubell, Esquire ("Lubell"), Aviva Wernick, Esquire ("Wernick"), and Hughes, Hubbard & Reed, LLP ("Hughes LLP"). The Omnibus Motion also: 1) seeks to quash the Subpoena and Notice of Taking Deposition Duces Tecum ("Subpoena") served on Lundborg on January 19, 2006; 2) seeks sanctions against Rotella for having caused the Subpoena to be filed and served upon Lundborg at a court-ordered mediation; and 3) seeks enlargement of time to complete the record and the issues on appeal for Lundborg's three appeals of various orders of this Court.

### 1. Lundborg's Motion to Dismiss Rotella's Pending Sanctions Motions

As indicated above, Lundborg's Motion to Dismiss seeks dismissal of the following four pending sanctions motions by Rotella against Lundborg and her counsel.

### A. Debtor's Motion to Strike

On May 27, 2005, Rotella filed Debtor's *Emergency Motion To Strike Susan Lundborg's Proof Of Claim; Motion for Compensatory And Punitive Sanctions Against Lundborg, Wernick, Lubell, and Hughes, LLP Pursuant To 28 U.S.C. § 1927 and 11 U.S.C. § 105 For Filing Fraudulent Proof Of Claim; and Motion To Immediately Refer Lundborg, Wernick, and Lubell To United State's [sic] Attorneys Office For Criminal Prosecution For Filing Fraudulent Proof Of Claim Pursuant to 18 U.S.C. §§ 152 and 3571* [C.P. 926] ("Debtor's Motion to Strike"). Debt-

---

pleading in its entirety.

**2.** In another excessively litigated case, a federal court recently ordered the parties to participate in alternative dispute resolution in the form of a "rocks, paper, scissors" game. *See Advista Management, Inc., v. Wausau Underwriters Insurance Co.*, Case No.: 6:05–cv–1430–Orl–31JGG (M.D.Fla. June 6, 2006) (the dispute at issue relating to the location of a deposition was referred to by Judge Presnell as the "latest in a series of Gordian knots that the parties have been unable to untangle without enlisting the assistance of the federal courts"). Having experienced the instant case, this Court fully understands Judge Presnell's frustration.

**3.** In addition to the four sanctions motions listed, on September 2, 2005, Rotella filed *Debtor's Motion for Sanctions and Status Report* [C.P.1158](the "Status Report Motion"). The Status Report Motion recapped Rotella's pending sanctions motions as of September 2, 2005, and stated his intention to file additional future sanctions motions. The relief sought in the Status Report Motion is duplicative of previously filed motions, and will not be separately addressed by the Court.

or's Motion to Strike seeks sanctions against Lundborg and her counsel for Lundborg's allegedly having filed a fraudulent proof of claim. The issue of Debtor's standing was raised at the April 17, 2006 hearing on this matter, however no evidence relative to the issue of Debtor's standing was presented. Therefore, on May 2, 2006 the Court *sua sponte* entered an *Order Setting Evidentiary Hearing* (the "Order Setting Evidentiary Hearing")[C.P. 1487], which set a supplemental evidentiary hearing on the issue of Debtor's standing for May 26, 2006. The Order Setting Evidentiary Hearing permitted any party in interest to present evidence on the issue of whether disallowance of Lundborg's Proof of Claim would have created a surplus of assets to be returned to Debtor at the time that Rotella filed Debtor's Motion to Strike.

## B. *Debtor's Stay Sanctions Motion*

The Cat Cay Property, which the parties have litigated over for several years, was at one time owned by Debtor and his non-filing wife, Carol Ann Walker. Debtor asserted on his bankruptcy schedules that the Cat Cat Property was exempt, however the Court subsequently determined that the Cat Cay Property was not exempt. *See Memorandum Order Determining Choice of Law for Trustee's Objection to Exemptions and Setting Briefing Schedule For Further Submissions by the Parties* [C.P.192] (determining that pursuant to 11 U.S.C. § 522(b)(2)(B), the law of the Commonwealth of the Bahamas is the applicable "nonbankruptcy law" governing determination of Debtor's claimed exemption in the Cat Cay Property); and *Memorandum Order Sustaining Trustee's Objection to Debtor's Interest in Real Property Claimed as Exempt* [C.P.228](finding that Bahamian law does not provide an exemption for real property held by husband and wife as joint tenants and therefore Debt-

or's interest in the Cat Cay property was not exempt).

In 1996 Eleanor C. Cole ("Cole"), a judgment creditor of the Debtor, domesticated her judgment against Debtor in the Bahamas. Cole thereafter sought and received relief in the courts of the Bahamas for a judicial sale of the Cat Cay Property to satisfy her judgment. A Bahamian Court Order entered on September 3, 2002 (the "Bahamian Sale Order") authorized the sale of the Cat Cay Property to Lundborg. The sale, although authorized, was not completed prior to Debtor's filing for bankruptcy protection on April 25, 2003.

On May 5, 2004, this Court heard Lundborg's *Motion for Reconsideration of Order Finding Susan Lundborg in Contempt of Court and Awarding Sanctions* [C.P. 294]. On May 12, 2004, the Court entered an *Order re Susan Lundborg's Motion for Reconsideration of Order Finding Susan Lundborg in Contempt of Court and Awarding Sanctions* (the "May 13, 2004 Order")[C.P.354]. The May 13, 2004 Order determined that pursuant to 11 U.S.C. § 541 Debtor's interest in the Cat Cay Property had become property of the bankruptcy estate as of the petition date. The May 13, 2004 Order found that Lundborg violated the automatic stay between January 2004 and March 2004, through her efforts to have the Bahamian courts force the completion of the sale of the Cat Cay Property. *See the May 13, 2004 Order* at 2–3. The May 13, 2004 Order vacated this Court's finding of contempt against Lundborg, but enjoined her "from proceeding with any sale or transfer of Debtor's interest in the Cat Cay Property or proceeds thereof without first obtaining relief from stay". *Id.* ¶¶ 1,4. The May 13, 2004 Order was entered "without prejudice to the Trustee's right to seek sanctions against Susan Lundborg for any violation of the automatic stay." *Id.* ¶ 9.

On July 13, 2005, Debtor filed a *Motion for Contempt and Sanctions for Violations of 11 U.S.C. § 362 and Enforcement of Automatic Stay Against Susan Lundborg* [C.P.1004]("Debtor's Stay Sanctions Motion"). On July 27, 2005, Lundborg filed a *Response to Debtor's [Stay Sanctions Motion] and Cross–Motion Against Debtor and Debtor's Counsel for Contempt and Sanctions for Violations of 11 U.S.C. § 362 and 28 U.S.C. § 1927 and Enforcement of the Automatic Stay* ("Lundborg's Stay Sanctions Cross–Motion") [C.P.1071] (collectively, the "Stay Violations Motions"). Each side alleged in the Stay Violations Motions that the other side had violated the automatic stay subsequent to the May 13, 2004 Order, by participating in litigation in the Bahamas relating to ownership of the Cat Cay Property.

An evidentiary hearing on the Stay Violations Motions was held on August 10, 2005, after which the Court entered the following two Orders: 1) *Order Granting Debtor's Motion for Contempt and Sanctions for Violation of 11 U.S.C. § 362 and Enforcement of the Automatic Stay Against Susan Lundborg* (the "Order Granting Debtor's Stay Sanctions Motion")[C.P. 1138] entered August 22, 2005; and 2) *Order Denying Susan Lundborg's Cross–Motion Against Debtor and Debtor's Counsel for Contempt and Sanctions for Violation of 11 U.S.C. § 362 and 28 U.S.C. § 1927 and Enforcement of the Automatic Stay* [C.P.1182] (the "Order Denying Lundborg's Stay Sanctions Cross–Motion") entered September 13, 2005 (collectively, the "Stay Violation Orders").

The Stay Violation Orders provide the following findings regarding the proceedings in the Bahamas. Debtor's wife, through Bahamian counsel, had initiated an action to set aside the Bahamian Sale Order which authorized sale of the Cat Cay Property to Lundborg. A trial was held in the Bahamas on December 7, 2004 to determine the validity of the Bahamian Sale Order. At the conclusion of the December 7, 2004 trial, Justice Lyons set aside the September 3, 2002 Bahamian Sale Order. On February 28, 2005, the Bahamian Courts heard Debtor's motion to set aside Cole's default judgment against him. At the conclusion of that hearing, Justice Lyons granted Debtor's motion, and set aside the default judgment based upon service of process defects and deficiencies. Lundborg, through Bahamian counsel, appealed both the December 7, 2004 and the February 28, 2005 orders of the Bahamian Courts. *See the Stay Violations Orders.*[4]

The Order Denying Lundborg's Stay Sanctions Cross–Motion determined that Debtor did not violate the automatic stay by seeking to set aside Cole's default judgment against him because, by taking that action, Debtor had not sought control of an asset of the estate or a claim of the estate. The Order Denying Lundborg's Stay Sanctions Cross–Motion further determined that Debtor had not violated the automatic stay by his alleged undertaking of the action to set aside the Bahamian Sale Order. The Court found that Bahamian counsel had neither been given instructions on behalf of Debtor, nor been retained on behalf of Debtor. The Court determined that Bahamian counsel had instead been retained on behalf of Debtor's non-filing wife. *See the Order Denying Lundborg's Stay Sanctions Cross–Motion.*

The Order Granting Debtor's Stay Sanctions Motion, however, found that Lund-

---

**4.** The Court understands that the Bahamian litigation is ongoing. The estate's interest in the property has since been sold and therefore the Bahamian litigation is no longer relevant to the pending matters before this Court.

borg did willfully violate the automatic stay by authorizing her Bahamian counsel to file two separate notices appealing the Bahamian Court orders of December 7, 2004 and February 28, 2005, without first having obtained relief from stay. *See the Order Granting Debtor's Stay Sanctions Motion.* Debtor's Stay Sanctions Motion seeks sanctions for this violation of the automatic stay by Lundborg.

## C. *Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion*

On July 30, 2005 Rotella sent a Rule 9011 communication to Wernick stating that he would file a motion for sanctions if Lundborg's Stay Sanctions Cross–Motion was not withdrawn within twenty-one days. The Court heard and denied Lundborg's Stay Sanctions Cross–Motion on August 10, 2005. On September 9, 2005, Rotella filed Debtor and Rotella P.A.'s *Motion For Award Of Sanctions Pursuant To Bankruptcy Rule 9011 Against Lundborg, Wernick, And Hughes LLP* [C.P. 1178] ("Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion"). Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion alleges that Lundborg's Stay Sanctions Cross–Motion violates Rule 9011 because: 1) it is not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, or the establishment of new law; and 2) the allegations and factual contentions contained therein have no evidentiary support, nor are they likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## D. *Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion*

On May 31, 2005, Mary Alice Gwynn, Esquire, ("Gwynn"), filed a *Motion by Interested Party Gwynn for all Remedies Available for Debtor's Counsel, Gary J, Rotella's Breach of His Mandatory Disclosure Requirements Pursuant to 11 U.S.C. § 329 and Bankruptcy Rules 2014 and 2016* [C.P. 930] ("Gwynn's Motion"). On June 13, 2005, Lundborg filed a *Partial Joinder In Motion For All Remedies Available For Debtor's Counsel, Gary J. Rotella's Breach Of His Mandatory Disclosure Requirements Pursuant To 11 U.S.C. § 329, Bankruptcy Rules 2014 And 2016 And Motion Of Susan Lundborg For Related Relief* [C.P. 950] ("Lundborg's Partial Joinder Motion"). On June 14, 2005, Rotella sent another Rule 9011 communication to Wernick stating that he would file a motion for sanctions if Lundborg's Partial Joinder Motion was not withdrawn within twenty-one days. The Court heard and denied Gwynn's Motion and Lundborg's Partial Joinder Motion on July 1, 2005. On September 9, 2005, Rotella filed *Debtor's Motion for Sanctions Pursuant to Bankruptcy Rule 9011 Against Lundborg and Wernick for Filing* [Lundborg's Partial Joinder Motion] [C.P. 1178] ("Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion"). Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion alleges that Lundborg's Partial Joinder Motion violates Rule 9011 because: 1) its legal contentions are unwarranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, or the establishment of new law; 2) the allegations and other factual contentions have no evidentiary support; and 3) it was filed for improper purposes.

### 2. *Lundborg's Motion to Quash*

On October 3, 2005, Rotella filed a *Motion To Compel Discovery Pursuant To Bankruptcy Rules 9014, 7030, 7034 And 7037, And Federal Rules Of Civil Procedure Rules 30, 34 And 37 As To Susan Lundborg, Daniel S. Lubell, Esquire And*

*Aviva L. Wernick, Esquire* [C.P. 1210] ("Debtor's Motion To Compel") which sought discovery relating to Rotella's Pending Sanctions Motions. On October 18, 2005, Lundborg filed a *Response to Motion to Compel* [C.P.1229]. Debtor's Motion to Compel was heard by the Court on October 20, 2005, at which time the Court ordered the parties to attend mediation. On November 14, 2005, the Court entered an *Order Pursuant to October 20, 2005 Hearing on Debtor's* [Motion to Compel][C.P.1244] (the "Mediation Order"). The Mediation Order directed: 1) all individuals and entities who are parties to the various motions for sanctions between Walker, Rotella, Rotella P.A., Lundborg, Lubell, Wernick, and Hughes LLP to schedule and complete mediation within 30 days of the October 28, 2005 hearing; 2) that all discovery by and between the parties regarding the pending motions for sanctions shall be stayed and abated to allow the Court ordered mediation of the various motions for sanctions to be conducted and completed; and 3) that, if necessary, the Court would consider discovery issues relating to the various motions for sanctions at a December 2, 2005 status conference. *See the Mediation Order* ¶¶ 2–4.

Due to scheduling conflicts, the mediation was subsequently scheduled and conducted before the Honorable Herbert I. Stettin on January 19, 2006 at the offices of Rotella P.A. On January 19, 2006, the day of the mediation, Rotella filed a *Subpoena and Notice of Taking Deposition Duces Tecum of Susan Lundborg on 2/17/06 at 1:00 P.M.* [C.P. 12798] (the "Subpoena") which he caused to be served on Lundborg at the mediation. On January 23, 2006, a *Notice Of Mediation Impasse* [C.P. 1280] was filed by Judge Stettin. On February 13, 2006, Lundborg's Motion to Quash was filed wherein she argues that the Subpoena was filed and served in bad faith, and in contravention of the Mediation Order. In addition to quashing the Subpoena, Lundborg's Motion to Quash seeks sanctions and a finding of contempt for Rotella's alleged violation of the Mediation Order.

### 3. *Lundborg's Motion to Enlarge Time*

Lundborg has filed three separate notices of appeal on the following orders of this Court: 1) the Order Granting Debtor's Stay Sanctions Motion; 2) the Order Denying Lundborg's Stay Sanctions Cross–Motion; and 3) *Order Denying Mary Alice Gwynn's Motion for All Remedies Available for Debtor's Counsel, Gary J. Rotella's Breach of His Mandatory Disclosure Requirements Pursuant to 11 U.S.C. § 329 and Bankruptcy Rules 2014 and 2016; Partial Joinder of Susan Lundborg in Motion for All Remedies Available for Debtor's Counsel, Gary J. Rotella's Breach of His Mandatory Disclosure Requirements and Motion for Related Relief by Susan Lundborg* [C.P.1103] (the "Order Denying Lundborg's Partial Joinder Motion"). As these orders are integral to Rotella's Pending Sanctions Motions, Lundborg requests an enlargement of time to complete the record and statement of issues on appeal until 20 days after entry of this Court's orders on Rotella's Pending Sanctions Motions. Lundborg's counsel, Wernick, has represented to the Court that if Rotella's Pending Sanctions Motions are dismissed, Lundborg will not pursue these appeals or her pending sanctions motions. *See April 17, 2006 Hearing Transcript* [C.P.1512] at 21–22.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a proceeding arising in a case under title 11 pursuant to 28 U.S.C. § 157(b)(1).

## I. Lundborg's Motion to Dismiss Rotella's Pending Sanctions Motions

### A. Debtor's Motion to Strike is Denied

Debtor's Motion to Strike filed on May 27, 2005, sought "the most severe of sanctions, including the immediate striking of Lundborg's ... Proof of Claim, the imposition of compensatory and punitive sanctions and, most importantly, a criminal referral to the United States Attorney's Office." *Debtor's Motion to Strike* at 1. Debtor's Motion to Strike accused Lundborg and her counsel of engaging "in a collective effort to perpetrate a massive fraud upon this Honorable Court by filing a fraudulent proof of claim" which threatened "to disrupt the orderly administration of the Debtor's Estate." [5] *Id.* On June 1, 2005, Lundborg filed her *Emergency Motion to Strike the Debtor's Emergency Motion to Strike Lundborg's Claim* [C.P. 933] ("Lundborg's Cross–Motion to Strike") which sought sanctions against Debtor and Rotella for their alleged abuse of process.

On June 2, 2005, Debtor filed an *Objection to Proof of Claim No. 5* [C.P. 935] ("Debtor's Objection"). Neither Debtor's Motion to Strike, nor Debtor's Objection alleged that there would be a surplus available for distribution to Debtor from the estate. On June 9, 2005, Patricia Dzikowski, Trustee, ("Trustee") filed an *Objection to Claim No. 5* [C.P. 945] ("Trustee's Objection"). Trustee's Objection sought to expunge Lundborg's Proof of Claim on different grounds than Debtor's Objection and Debtor's Motion to Strike. Trustee's Objection stated that Trustee had entered into a settlement with Debtor, whereby the estate's "right title and interest, subject to any and all claims, liens, and encumbrances, in the Cat Cay Property located in the Bahamas is being conveyed to the Debtor." *Trustee's Objection* ¶ 8. Trustee's Objection maintained that to the extent Lundborg had any claim(s) secured by the Cat Cay Property, that claim would serve as an encumbrance against the real property, that claim would follow the real property, and that claim would be enforceable against it in the Bahamas. *Id.* ¶ 6.

On July 6, 2005, Lundborg filed Responses to Trustee's Objection and Debtor's Objection [C.P. 988, 989]. On July 25, 2005, the Court entered an *Order Denying Legal Objections to Proof of Claim No. 5 Filed by Susan Lundborg* [C.P. 1045](the "July 25, 2005 Order"), which overruled and denied Debtor and Trustee's legal objections [6] to Lundborg's Proof of Claim. The July 25, 2005 Order stated that an evidentiary hearing would be scheduled to consider the allowance of Lundborg's Proof of Claim and the additional relief requested in Debtor's Motion to Strike, Lundborg's Cross–Motion to Strike, and Debtor's related sanctions motions, if necessary. *Id.* ¶ 2.

---

5. At a hearing on July 29, 2005 the Court *sua sponte* struck that portion of Debtor's Motion to Strike which sought referral of Lundborg, Wernick and Lubell to the United States Attorney's Office for criminal prosecution. The Court found that Debtor and Rotella lacked standing to seek such a referral. This oral ruling was embodied in the Court's August 9, 2005 *Order Striking Motion to Immediately Refer Lundborg, Wernick, and Lubell to the United States Attorney's Office for Criminal Prosecution for Filing Fraudulent Proof of Claim* [C.P.1109](the "Sua Sponte Order").

6. The July 25, 2005 Order found Lundborg's Proof of Claim was not barred by the doctrines of res judicata, waiver or estoppel, and that Lundborg's Proof of Claim was sufficiently executed and filed in accordance with B.R. 3001(f). The legal objections in Trustee's Objection, Debtor's Motion to Strike, Debtor's Objection, and the legal objections raised orally by Rotella at the July 8, 2005 hearing were overruled.

### 1. The Lundborg Settlement and the Sale to Rotella

On August 2, 2005, Trustee filed a *Motion to Approve Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P. 1085] ("Trustee's Motion to Approve Lundborg Settlement") which ultimately eliminated the need for an evidentiary hearing on Lundborg's Proof of Claim. On August 5, 2005, the Debtor filed an *Objection to Stipulation for Resolution of Trustee's Objection to Claim No. 5 and Motion to Dismiss Adversary Proceeding* [C.P.1104]. On August 10, 2005 the Court heard Trustee's Motion to Approve Lundborg Settlement. On August 29, 2005 the Court entered an *Order Approving Resolution of Trustee's Objection to Claim No. 5 of Susan Lundborg* [C.P. 1145](the "Order Approving Lundborg Settlement"). The Order Approving Lundborg Settlement provided, among other things, for withdrawal of Lundborg's Proof of Claim, which "resolved the Trustee's Objection and Motion and moots any other objections to her Proof of Claim". *Id.* ¶ 1. The Order Approving Lundborg Settlement provided for mutual releases by Lundborg, Trustee and the estate for any claims between Lundborg, Trustee and the estate arising from this case, including any claims for violations of the automatic stay. In addition, the automatic stay would be lifted with respect to the Cat Cay Property. Although the Court approved withdrawal of Lundborg's Proof of Claim, the Court made no findings as to the merits of Lundborg's Proof of Claim, nor did it determine the merits of any direct claims that Debtor and Lundborg might have or assert against each other outside of this bankruptcy proceeding. The Order Approving Lundborg Settlement also provided that the estate would sell its interest in the Cat Cay Property "if any, subject to whatever rights, claims and interests may exist in the Bahamas in or with respect to the [Cat Cay] Property, including without limitation, all rights, claims or interests of Ms. Lundborg, if any, that are currently the subject of appeals in the Bahamas." *Id.* ¶ 6. *See the Order Approving Lundborg Settlement* for complete terms of the settlement.

On June 15, 2005, the Trustee filed a *Motion By Trustee Patricia Dzikowski to Approve Settlement and Sale of the Bankruptcy Estate's Right Title and Interest in the Bahamian Real Property at Cat Cay, Lot 32* [C.P.953] ("Trustee's Motion to Approve Sale"). On September 1, 2005, the Court entered *an Order Granting Motion to Approve Settlement and Sale as Modified* [C.P. 1153] (the "Order Approving Sale") which approved sale of the estate's interest in the Cat Cay Property to Debtor and Rotella. The Order Approving Sale noted that Rotella P.A. was the owner by assignment of the Law Firm of Ferrell Law P.A.'s ("Ferrell") administrative claim ("Ferrell's Administrative Claim") for attorneys' fees and costs for their representation of the former Chapter 7 Trustee.[7] As part of the settlement, Debtor and Rotella P.A. released, waived and/or subordinated any and all claims against the estate and Trustee. Debtor paid Trustee's

---

**7.** Ferrell's original fee application in the amount of $639,239.86 was objected to by the U.S.Trustee because $102,687.50 of the amount sought related to the defense of the Debtor's *Emergency Motion to Remove Trustee, Linda J. Walden Pursuant to 11 U.S.C. § 324* [C.P. 513]. The U.S. Trustee withdrew her objection based on a downward adjustment of fees to $536,552.36 as reflected in the Court's August 18, 2005 *Order Awarding Attorneys' Fees and Costs* [C.P.1124]. On August 23, 2005 the Court also entered an *Order of Substitution of Claim* [C.P.1125] which substituted Rotella P.A., transferee for Ferrell, as the claimant for this award of fees.

fees and Trustee's attorney's fees and costs totaling $56,000 in cash and applied Rotella's credit bid of $757,044.71 [8] for a total offer of $813,044.71 for the estate's interest in the Cat Cay Property. This bid was accepted as the highest and best offer for the estate's interest in the Cat Cay Property. *See the Order Approving Sale* for complete terms of the sale and settlement.

### 2. The Debtor Lacks Standing

Lundborg makes several arguments in opposition to Debtor's Motion to Strike including that Debtor had no standing to file Debtor's Motion to Strike, and that the Order Approving Lundborg Settlement bars Debtor's Motion to Strike. Rotella argues that Debtor does have standing, and Rotella attaches significance to the difference between Debtor's Motion to Strike and Debtor's Objection. To the extent that Debtor's Objection is a one-page filing that incorporates Debtor's Motion to Strike in its entirety without adding anything, it is a distinction without meaning. Debtor's Motion to Strike seeks sanctions pursuant to 28 U.S.C. § 1927 and 11 U.S.C. § 105 against Lundborg, Wernick and Lubell for filing Lundborg's Proof of Claim. As discussed below, the Court finds that whether framed as Debtor's Motion to Strike or as Debtor's Objection, Debtor is without standing to seek the relief requested.

Debtor's Motion to Strike alleges that Lundborg's Proof of Claim was fraudulently filed. It is a crime to "knowingly and fraudulently present any false claim for proof against the estate of a debtor." *See* 18 U.S.C. § 152(4). However there is no "specific provision under 18 U.S.C. § 152 for private civil damage suits" by a debtor against a creditor. *Clayton v. Raleigh Fed. Sav. Bank,* 194 B.R. 793, 795 (M.D.N.C.1996). The Sua Sponte Order entered on August 9, 2005 previously determined that the Debtor had no standing to assert a private right of action in requesting the Court to make a criminal referral. The Court now finds that Debtor is also without standing as to the remainder of Debtor's Motion to Strike.

■ The trustee is the representative of the estate. *See* 11 U.S.C. § 323. The Chapter 7 trustee is charged with many duties including the duty to "investigate the financial affairs of the debtor" and to "examine proofs of claim and object to the allowance of any claim that is improper." *See* 11 U.S.C. § 704. The trustee is also empowered to settle claims against the estate subject to court approval. *See* Bankruptcy Rule 9019. The duties of a Chapter 7 debtor, which are listed in 11 U.S.C. § 521, are distinct from the duties of the Chapter 7 trustee. The debtor's duties include cooperating with the trustee to enable the trustee to perform the trustee's duties and surrendering all property of the estate and any recorded information to the trustee. *See* 11 U.S.C § 521(3) &

---

8. Rotella P.A.'s credit bid has two components. In addition to the assignment of Ferrell's Administrative Claim in the amount of $536,552.36, Rotella P.A. was awarded attorneys' fees and costs in the amount of $220,492.35 pursuant to the Court's *Order Awarding Attorneys' Fees and Costs* [C.P.7] entered in the adversary proceeding styled, *Gary J. Rotella, Esq., Gary J. Rotella, P.A. and James F. Walker v. Patricia A. Dzikowski, Chapter 7 Trustee,* Adv. Proc. No. 05–3127–BKC–PGH–A. Rotella had sued Trustee for attorney's fees and costs allegedly incurred for services rendered to and which benefitted the Chapter 7 estate when the Bahamian Courts determined that Trustee lacked standing to intervene in the Bahamian proceedings. The *Order Awarding Attorneys' Fees and Costs* also permitted Rotella P.A. to credit bid the award of $220,492.35 at any sale of the estate asset(s) by Trustee. Thus, Rotella P.A.'s credit bid of $757,044.71 is the sum of Rotella P.A.'s award of $220,492.35 and the transferred Ferrell award of $536,552.36.

(4). Thus it is the trustee's job, not the debtor's, to examine proofs of claim and to object to the allowance of any claim that is improper. *See, e.g., In re Woods,* 139 B.R. 876, 877–78 (Bankr.E.D.Tenn.1992)("The responsibility for examining and objecting to claims rests with the trustee. To permit debtors to assume that responsibility would permit them to usurp the trustee's authority and to require the courts to rule on objections where the allowance or disallowance of the claim is meaningless to the administration of the estate.")

 "Typically, a debtor has no standing to object to claims or orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the estate." *In re Kieffer–Mickes, Inc.,* 226 B.R. 204, 208 (8th Cir. BAP 1998) (*In re Kapp,* 611 F.2d 703, 706–07 (8th Cir.1979); *In re Broady,* 96 B.R. 221, 223 (Bankr.E.D.Mo.1988)). "This is because an objection to a proposed distribution only affects how much each creditor will receive and does not affect the debtor's rights." *Id.*(citations omitted). "Courts have recognized two exceptions to this rule: (1) where no trustee has been appointed; or (2) where there will be a surplus after distribution providing the debtor with a pecuniary interest in the estate." *Caserta v. Tobin,* 175 B.R. 773, 775 (S.D.Fla.1994). "[W]hen a debtor disputes claims of creditors, standing is proper if the disallowance of the claims would create a surplus of assets to be returned to the debtor." *Kunimoto v. Fidell,* 26 Fed. Appx. 630, 632 (9th Cir.2001). The Court notes that the statement "if the debtor can show a reasonable possibility of a surplus" is taken from the case of *In re Cult Awareness Network, Inc.,* 151 F.3d 605, 608 (7th Cir.1998), not *Kieffer–Mickes,* 226 B.R. 204, as cited in *Debtor's Closing Ar-*

*guments Relating To The Evidentiary Hearing* [C.P. 1564] ("Debtor's Closing Argument"). The *Kieffer–Mickes* statement of the exception allowing debtor standing is "[w]here it appears that, if the contested claims are disallowed, there will be a surplus." 226 B.R. at 209. Another statement of the test is, "unless the Debtor can demonstrate that disallowing the claims would produce a surplus which would be available to the Debtor, the Debtor lacks standing to object to the claim." *In re Stanley,* 114 B.R. 777, 778 (Bankr.M.D.Fla.1990). Whether the test requires a reasonable possibility of a surplus or a certainty of a surplus, it remains the debtor's burden to provide sufficient evidence that disallowance of the contested claim will produce a surplus distribution to the debtor. *See, e.g., Cult Awareness Network,* 151 F.3d at 608.

 In an effort to meet that burden Rotella has argued unpersuasively, and at great length, that in applying the test to determine whether there would be a surplus distribution to Debtor, the Court should consider only allowed claims that are "liquidated" as that term is defined by the Eleventh Circuit in *United States of America v. Verdunn,* 89 F.3d 799 (11th Cir.1996). *Verdunn* analyzed the meaning of the term "liquidated" in the context of interpreting the 11 U.S.C. § 109(e) statutory criteria for eligibility to file Chapter 13.[9] However, this is not the standard courts have used for evaluating whether a surplus would be created so as to confer standing upon a debtor to object to a claim in a chapter 7 liquidation case.

The Ninth Circuit affirmed dismissal of a Chapter 7 debtor's appeal in *In re Eisen,* 97 Fed.Appx. 91 (9th Cir.2004) where as

---

9. In contrast to a Chapter 7 liquidation, creditors generally benefit when a debtor elects repayment pursuant to a Chapter 13 reorganization.

here, administrative expenses would have surpassed the value of the estate's assets:

> [T]he trustee argued there are insufficient funds in the estate to cover administrative expenses and therefore Eisen's appeal is moot. We agree. *See In re P.R.T.C., Inc.*, 177 F.3d 774, 778 n. 2 (9th Cir.1999) ("a debtor cannot challenge a bankruptcy court's order unless there is likely to be a surplus after bankruptcy"); *see also In re Fondiller*, 707 F.2d 441, 442 (9th Cir.1983) ("a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate").

In *Cult Awareness Network*, the Seventh Circuit took into account the "litigation costs and attorneys' fees" to be accrued in holding that "a potential judgment in this case is not the kind of reasonable possibility of a surplus that gives a debtor standing..." 151 F.3d at 608. Similarly, in the case of *In re Silverman*, 37 B.R. 200 (S.D.N.Y.1982), the District Court found on the basis of a filed, rather than allowed administrative claim, that "even if all the [secured creditor's] claims except for the administrative claim are assumed to have been extinguished, the bankrupt has not established on the record here that a surplus will in fact exist." 37 B.R. at 201. Thus courts have considered accrued and even future administrative claims in their analysis of whether there existed a reasonable possibility of a surplus distribution so as to confer standing upon a debtor.

It is appropriate for the Court to include accrued and future administrative expenses in its analysis because there was no cash whatsoever in the estate to pay administrative expenses when Rotella filed Debtor's Motion to Strike. Consequently the professionals had little motivation to file requests for administrative claim al-

lowance at the time that Rotella filed Debtor's Motion to Strike.

It is also noteworthy that Debtor's schedules listed only $101.00 in assets and $1,095,257.28 in liabilities, none of which were indicated by Debtor to have been contingent, unliquidated or disputed. Even though the debts owed to Cole and to FPC have been stricken, Debtor had additional scheduled debt in the amount of $415,377.63 for which no proofs of claim had been filed by creditors. Had there been any cash in the estate or even the reasonable possibility of a surplus, these creditors might have sought permission to file late proofs of claim.[10] As matters stood on May 27, 2005, the estate was obviously administratively insolvent. There was no reason for the other creditors to attempt to file late claims given that the case had been filed as a no asset case and there was no possibility of any payment to creditors when Rotella filed Debtor's Motion to Strike.

■ Having determined that it is proper to consider accrued and future administrative expenses the Court finds, as discussed more fully below, that disallowance of Lundborg's Proof of Claim would not have created a surplus of assets to be returned to Debtor. Therefore Debtor lacked standing to object to, or move to strike, Lundborg's Proof of Claim. Lacking standing to object to, or move to strike Lundborg's Proof of Claim, the Court finds that Debtor is also without standing to seek sanctions for Lundborg having filed Lundborg's Proof of Claim.

Trustee's Motion to Approve Sale, filed on June 15, 2005, sought Court approval for a settlement with Debtor, and for a sale to Debtor of the estate's interest in the Cat Cay Property for $20,000 in cash,

---

**10.** Late-filed proofs of claim are subordinated to timely filed proofs of claims but senior to any distribution to the debtor. 11 U.S.C. § 726(a).

the amount of Trustee's administrative expense for fees and attorney's fees and costs. Trustee's Motion to Approve Sale argued that the sale was in the best interest of the estate in light of, among other factors, the estate's lack of cash, the costs and uncertainties of pending litigation here and in the Bahamas, the September 18, 2003 appraisal by H.G. Christie Real Estate that had been obtained by the former trustee valuing the Cat Cay Property at $625,000, the June 9, 2004 appraisal by Robin Brownrigg that had been obtained by Debtor and his wife valuing the Cat Cay Property at $585,000, the attorney's fees sought from the estate by Debtor's counsel, and in light of the fact that at best the estate had a one-half interest with Debtor's wife in the Cat Cay Property. All of these factors substantiated Trustee's opinion that a sale of the estate's interest of the Cat Cay Property for $20,000 was in the best interest of the estate.

By the time of the August 10, 2005 hearing on Trustee's Motion to Approve Sale, Trustee's attorney's fees and costs had increased to approximately $50,000 and there was still no cash in the estate. At the hearing, Debtor increased the cash portion of his offer to $56,000 to cover the Chapter 7 administrative expenses. Trustee adopted her counsel's statements at the hearing that the property was worth "in the ballpark of $700,000, if there were no claims, no liens, no encumbrances, a free and clear type sale." To which Mr. Rotella added, "In entirety." *See August 10, 2005 Hearing Transcript* [C.P. 1205] at 27. Trustee disputed the July 5, 2005 appraisal of $1,000,000 that had been obtained from H.G. Christie, Ltd. by Mr. Murphee, Esq. of Ferrell. Trustee then disclosed that claims existed for real estate taxes that had been paid by Lundborg, for remediation of hurricane damage (for which the property had been condemned), and assessments by the Cat Cay Yacht

Club. In addition to the prospect of the Bahamian litigation including both its cost and uncertainty, Trustee expressed her concern that even if she prevailed in that litigation there remained the problematic issue of having the Bahamian government recognize a chapter 7 trustee as the owner of the Cat Cay Property. Moreover, the appraisals valued a fee simple interest in the entire property, and as Trustee's counsel noted "[t]here is a co-ownership claim, of the non-filing spouse, so we're selling again, less than a full fee share, or less than a full half share." *Id.* at 29. Lastly, the estate's interest was to be sold subject to all liens, claims or encumbrances, including Rotella's administrative claims in the amount of $757,044.71 which amount was a valid claim, notwithstanding that Rotella had agreed to subordinate his claims to those of Trustee. The Court approved the sale of the estate's interest in the Cat Cay Property to Debtor and Rotella for $813,044.71, said amount representing a cash payment of $56,000 and Rotella's credit bid of $757,044.71. Thus, using Trustee's valuation of $700,000 for the Cat Cay Property in its entirety, free and clear of all liens, and employing the generous assumption that the estate's interest would be valued as a full one-half interest, the **gross proceeds** to the estate before deducting transfer taxes, stamps, outstanding claims for real estate taxes, and other costs, would have been, at most, $350,000. Given Trustee's administrative expenses of $56,000 and Rotella's claims for attorney's fees of $757,044.71, the estate was deeply administratively insolvent. The Court finds there was no reasonable possibility of a surplus distribution to Debtor on either March 9, 2005 when Trustee and Rotella executed their Settlement Agreement which provided for sale of the estate's interest for $20,000 in cash and subordination of Rotella's administra-

tive claims (*see* Exhibit "A"—Settlement Agreement attached to Trustee's Motion to Approve Sale), on May 27, 2005 when Rotella filed Debtor's Motion to Strike, or on August 25, 2005 when the Court approved Trustee's Motion to Approve Sale. Even using the appraisal value of $1,000,000,[11] this result remains unchanged. Consequently, Debtor was without standing to object to, or move to strike Lundborg's Proof of Claim.

▆▆▆ Debtor's Motion to Strike seeks sanctions against Lundborg and her counsel pursuant to 28 U.S.C. § 1927 and 11 U.S.C. § 105. Section 1927 of title 28 of the United States Code provides:

Any attorney or other person admitted to conduct such cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

As a threshold matter section 1927 sanctions can be awarded only against attorneys, they may not be imposed against Lundborg who is not an attorney. In addition, since Debtor lacks standing to bring Debtor's Motion to Strike, it follows that he also lacks standing to request sanctions against Lundborg's counsel for vexatious multiplication of the proceedings pursuant to §§ 1927 or 105. Furthermore, Debtor's

Motion to Strike was rendered moot by withdrawal of Lundborg's Proof of Claim. *See the Order Approving Lundborg Settlement* ¶ 2.

### 3. The Equities of this Contested Proceeding

▆▆▆ "[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939). It would be an inequitable use of the wrong legal standard if, as urged by Rotella, the Court ignored the significant accrued administrative expenses and considered only filed liquidated claims as of May 27, 2005 to determine Debtor's standing for Debtor's Motion to Strike. The Court does not agree with Rotella's argument that "anything and everything that occurred subsequent to May 27, 2005 in terms of claims analysis, is after the fact, irrelevant, immaterial and 'out of bounds' consistent with" the Order Setting Evidentiary Hearing.[12] It was known both to the Court and to all parties in this case that the administrative claims had been accruing for over two years, that they were substantial, and that they were continuing to accrue when Rotella filed Debtor's Motion to Strike. Indeed, Rotella's claim for his own administrative expense, advanced in an adversary complaint filed on June 15, 2005, was approved by the Court for $220,492.35.[13] Rotella sought and received a Court order

11. The Debtor's June 2, 2006 *Memorandum of Law Relating To Evidentiary Hearing* ... [C.P. 1548] at paragraph 30, states that as of May 27,2005, the estate's one-half interest in the Cat Cay Property had an approximate value of $500,000.

12. Assuming *arguendo* that matters subsequent to May 27, 2005 were irrelevant as Rotella urges, the terms of the settlement and sale between Rotella and Trustee were agreed to and memorialized in a settlement agree-

ment executed on March 9, 2005. *See Trustee's Motion to Approve Sale* Exhibit "A".

13. Rotella documented and sought $673,559.98 from the Chapter 7 estate for attorney's fees and costs allegedly incurred by him on behalf of the estate in the adversary proceeding styled *Gary J. Rotella, Esq., et al., v. Patricia A. Dzikowski, Chapter 7 Trustee*, Adversary Case No.:05–3127–BKC–PGH–A.

approving his administrative expense and the ability to credit bid the full amount of that administrative expense at a sale of the estate's interest in the Cat Cay Property. Rotella also bought Ferrell's Administrative Claim in the amount of $536,552.36 which was approved by order of the Court. Rotella similarly sought and received permission to credit bid the full amount of the approved Ferrell Administrative Claim. Yet now Rotella argues that the Court "likely would have only awarded Ferrell Law some *de minimus* fraction of the total amount, if anything, because any difference in the amount of attorneys' fees was undeserved since same conferred no benefit upon the estate." *See Debtor's Closing Argument* ¶ 9. On one hand Rotella seeks and receives approval to credit bid $757,044.71 in administrative expenses for the estate's interest in the Cat Cay Property, yet now he argues that his credit bid should have been worth only some *de minimus* fraction of $757,044.71 or perhaps it was not worth anything at all! Rotella is now judicially estopped from taking an inconsistent position on the value of his credit bid.[14]

As Justice Alito recently explained in *Zedner v. U.S.*, —— U.S. ——, ——, 126 S.Ct. 1976, 1987, 164 L.Ed.2d 749 (2006):

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

Debtor's Closing Argument quotes the transcript from the August 25, 2005 hearing on Trustee's Motion to Approve Sale wherein the Court ruled that Lundborg's cash offer of $150,000 was "moot unless she is offering more than Mr. Rotella's administrative claim." *August 25, 2005 Hearing Transcript* [C.P.1184] at 42. Rotella simply cannot have it both ways, the equitable doctrine of judicial estoppel will not allow it. His credit bid cannot be maximized to freeze out other bidders at the sale and then minimized for the purpose of showing that there would have been a surplus in the estate to confer standing upon Debtor to seek sanctions against Lundborg for having filed an allegedly fraudulent proof of claim.

Furthermore, Debtor's argument for standing is premised on two of the largest claims in this case having been stricken and the possibility that Rotella will waive his administrative claim.[15] While the

---

14. Rotella moved for a continuance of the May 26, 2006 hearing based upon the unavailability of his expert witness Chad Pugatch, Esq., a bankruptcy attorney in the South District of Florida. Rotella sought to present expert opinion testimony by Mr. Pugatch on the issue of whether the administrative fees would have been allowed. The Court determined that Mr. Pugatch's testimony was unnecessary because the Court did not need expert opinion testimony on a legal issue that did not involve foreign law. In addition, the principles of judicial estoppel prohibit Rotella's collateral attack on the value and/or allowance of administrative expenses that were approved by this Court at Rotella's urging.

15. On November 14, 1989, Cole obtained a final judgment against Debtor in state court in the amount of $302,933.14 plus interest.

Court's April 26, 2006 *Memorandum Order* [C.P. 1472] made no ruling as to whether it was the claimant or the claimant's counsel who were culpable for the discovery abuses that resulted in the striking of Cole's Proof of Claim and FPC's Proof of Claim, it would be inequitable to allow Debtor to be advantaged due to the manner in which events unfolded in this case. The acrimony in this case was fueled in part by excessive litigation and a seemingly endless parade of sanctions motions initiated by Rotella (and reactive cross-sanctions motions by others) at every step along the way. To some extent, perhaps significantly, the discovery abuses that set the stage for the striking of Cole's Proof of Claim and FPC's Proof of Claim were a result of this acrimonious environment. It would also be inequitable for the Court to be persuaded to award Rotella an administrative claim, and then allow Rotella to waive the administrative claim in order to create standing to pursue collection of that claim through Rotella's Pending Sanctions Motions. The Court chooses not to exercise its discretion to reward Debtor by awarding sanctions as Debtor's counsel has so repetitively requested.

 Finally, even if Debtor had standing to object to, or move to strike Lundborg's Proof of Claim, the Court would not have exercised its discretion to award sanctions. Lundborg through her counsel has been an active participant in this case. Her participation in this case arose from her claim of interest in the Cat Cay Property, not from her having filed Lundborg's Proof of Claim[16]. The Court finds that the disputes between Lundborg and Debtor arose from Lundborg's claim of interest in the Cat Cay Property, not from her having filed Lundborg's Proof of Claim. The majority of the litigation related to Lundborg's Proof of Claim related to Rotella's allegation that it was a fraudulent proof of claim and a criminal act. Even if Rotella had standing to object to, or move to strike Lundborg's Proof of Claim, the Court would not exercise its discretion to award fees in light of the claim having been withdrawn and in light of the comparatively minimal amount of litigation related to the proof of claim, other than litigation concerning Rotella's Pending Sanctions Motions.

## B. *Debtor's Stay Sanctions Motion is Denied for Lack of Standing*

 Debtor's Stay Sanctions Motion seeks actual and punitive damages as sanctions against Lundborg pursuant to 11 U.S.C. § 362(h) for her willfully violating the automatic stay by appealing two Bahamian court orders. *See the Order Grant-*

---

Debtor scheduled the amount of $557,396.98 for this debt. Cole filed proof of claim no. 2 in the amount of $1,407,458.59 ("Cole's Proof of Claim"). In 1991 and 1992, FPC obtained a series of final judgments against Debtor in state court. Debtor scheduled the amount of $122,482.67 for this debt. FPC filed proof of claim no. 3 in the amount of $470,776.49 ("FPC's Proof of Claim"). Debtor's counsel's efforts to obtain discovery from Cole and FPC were unsuccessful over a period of nearly two years. On April 12, 2005, the Court struck Cole's Proof of Claim and imposed sanctions against her pursuant to the Court's *Order Granting Debtor's Motion for Default Judgment Against Cole as Sanctions for Refusal to*

*Obey Subpoena, Appear and Testify at Deposition and Amended Motion to Strike Claim* [C.P.805]. On April 19, 2005, the Court struck FPC's Proof of Claim pursuant to the Court's *Order Granting Debtor's Emergency Motion for Default Judgment Against FPC and Carl H. Shui and Striking Pleadings and Proof of Claim* [C.P.832].

16. Lundborg's Proof of Claim does not appear on its face to be a valid claim, however it is not necessary for the Court to reach that issue because the claim has been withdrawn and because of the Court's findings herein.

*ing Debtor's Stay Sanctions Motion.* 11 U.S.C. 362(h)[17] provided:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

The Order Granting Debtor's Stay Sanctions Motion stated that a separate hearing would be set to determine the amount of sanctions to be assessed in connection with Lundborg's violation of the automatic stay. However at the August 10, 2005 hearing on the Stay Violations Motions, the Court stated that:

> I don't know if there [are] any damages ... but since I did not set the damage portion of the hearing today, I can't rule on that issue. But frankly, I have to call into doubt whether there are any sanctions applicable, because it's really the estate who has the right to respond to the appeal, since it's really the property of the estate that's being contested ... So having earlier said I reserve on those damages, I'll reserve on them. But before people spend a lot of time wasting money, you need to internally address that issue.

Aug. 10, 2005 Tr. [C.P.1205]at 183.

The Court having considered this issue over the past many months, finds that a hearing to determine the amount of sanctions to be assessed in connection with Lundborg's violation of the automatic stay would be wasteful and is unnecessary. The legislative history of the Bankruptcy Code notes two major purposes of the automatic stay. "One of these purposes is protection of the estate for the benefit of creditors.... The other purpose [i]s to advance the debtor's fresh start, providing immediate relief from the pressure of collection activity." *In re Benalcazar,* 283 B.R. 514, 520–21 (Bankr.N.D.Ill.2002). Lundborg was found to have wilfully violated the automatic stay by appealing Bahamian court orders relating to ownership of property of the estate, i.e., the Cat Cay Property. Lundborg's violation of the stay did not implicate Debtor's fresh start and therefore could not have damaged Debtor. If there had been any damage as a consequence of a stay violation against estate property, it would necessarily have been damage to the estate reflected in additional attorneys' fees incurred by the estate. As the individual charged with protection of the estate for the benefit of creditors, the Chapter 7 trustee is the party with standing to seek damages for violation of the automatic stay against property of the estate.[18] *See, e.g., In re Lickman,* 301

**17.** 11 U.S.C. § 362(h) of the Bankruptcy Reform Act of 1978 ("Reform Act") is very similar to 11 U.S.C. § 362(k)(1) of the new Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 362(k)(1) adds an exception that was not included in the previous section 362(h) of the Reform Act. The new exception is not implicated in this matter. 11 U.S.C. § 362(k) of BAPCPA states:

(k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

**18.** Courts are divided as to whether the trustee, as the representative of the legal entity "the estate", is an "individual" who is able to seek damages for violations of the automatic stay pursuant to 11 U.S.C. § 362(h). The Ninth Circuit has determined that the trustee *is not an individual entitled to recover damages* under § 362(h), but that the trustee may nonetheless recover damages for stay violations pursuant to § 105. *See, e.g., In re Dyer,*

B.R. 739 (Bankr.M.D.Fla.2003)(determining that a cause of action to recover damages for violation of the automatic stay belonged to the bankruptcy estate rather than creditors and that the trustee had standing to pursue the action).

In this matter, Trustee sought and received Court approval to settle with Lundborg. The Order Approving Lundborg Settlement provided that: "The Trustee and the Estate, and Ms. Lundborg, mutually release each other and their attorneys, representatives, designees and assigns from any claims, demands, obligations, liabilities and causes of action of any kind or character that they may have against the other in or arising from this case, including any claims for possible violations of the automatic stay, from the beginning of the world to the date of this Order." *The Order Approving Lundborg Settlement* ¶ 7. Thus, any claim for damages to the estate resulting from Lundborg's violation of the automatic stay, including any administrative attorneys' fees, have been released by the Trustee.

The matter of standing to bring a cause of action is a jurisdictional issue, derived from the "case or controversy" requirement, under Article III, § 2 of the United States Constitution, and is therefore a threshold issue in all cases seeking to be heard in federal court. To meet constitutional requirements, a party must have a "personal stake in the outcome of the controversy." Accordingly, a party must base his claim on "his own legal rights and interests, and cannot rest his claim for relief on the legal rights or interests of third parties." *In re Hamp-*

322 F.3d 1178 (9th Cir.2003). Other courts have found that the trustee is indeed an "individual" for purposes of § 362(h). *See In re Lickman*, 297 B.R. 162, 194–95 (Bankr. M.D.Fla.2003) for a discussion of cases on both sides of the question. The *Lickman*

*ton Hotel Investors, L.P.*, 289 B.R. 563, 573 n. 14 (Bankr.S.D.N.Y.2003) (citations omitted).

In the context of bankruptcy, standing to appeal an order of the court is reserved for persons aggrieved. "A litigant qualifies as a 'person aggrieved' if the order diminishes his property, increases his burdens, or impairs his rights." *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987). In this case, Debtor's interest in the property was ceded to the estate when Debtor filed his Chapter 7 petition for relief, and therefore the stay violations could not and did not diminish Debtor's property, increase his burdens, or impair his rights. Thus the Court does not find that Debtor is a person aggrieved by Lundborg's violations of the automatic stay against an interest in property that was owned by the estate, *not Debtor*, when the stay violations occurred. The damage that may have been caused by the stay violations, if any, was damage to the estate, not to Debtor. Accordingly, Debtor is without standing to seek sanctions for violation of the stay and Debtor's Stay Sanctions Motion is denied.

### C. *The Rule 9011 Motions*

While the American Rule prohibits fee shifting in most cases, narrow exceptions permit a court to impose attorney's fees as sanctions in cases where a litigant has engaged in bad-faith conduct or willful disobedience of court orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Other mechanisms such as Rule 11 "permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard." *Id.*

court ultimately determined that "[r]egardless of how the question is answered, there is no real dispute as to the trustee's ability to recover sanctions for violations of the automatic stay." *Id.* at 195.

"The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers.' " *Kaplan v. DaimlerChrysler, A.G.,* 331 F.3d 1251,1255 (11th Cir.2003)(*citing Massengale v. Ray,* 267 F.3d 1298, 1302 (11th Cir.2001)). "{T}he amended rule now makes the imposition of sanctions for violations discretionary, rather than mandatory. In line with Rule 11's ultimate goal of deterrence, rather than compensation, the amended rule also de-emphasizes monetary sanctions and discourages direct payouts to the opposing party." *Ridder v. City of Springfield,* 109 F.3d 288, 294 (6th Cir.1997)(citing Fed.R.Civ.P. 11 Advisory Comm. Notes (1993 Amendments)).

■■■ Rule 11 sanctions may be imposed " '(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose.' " [19] *Souran v. Travelers Ins. Co.,* 982 F.2d 1497, (11th Cir.1993)(*quoting Pelletier v. Zweifel,* 921 F.2d 1465, 1514 (11th Cir.1991)). "The rule incorporates an objective standard." *Kaplan,* 331 F.3d at 1255 (*citing Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987)). Since Rule 9011 only permits sanctions when the challenged pleading is signed in violation of the rule,

> the court's inquiry should ... focus on the merits of the pleading gleaned from the facts and law known or available to the attorney at the time of filing.... The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was

reasonable to believe at the time the pleading, motion, or other paper was submitted. *Mroz,* 65 F.3d at 1572 (citations omitted).

■■■ Rule 9011(c)(1)(A) provides the procedural requirements for a motion seeking sanctions under the rule. Failure to comply with the procedural requirements of Rule 11 precludes imposition of the requested sanctions. *Brickwood Contractors v. Datanet Eng'g Inc.,* 369 F.3d 385, 389 (4th Cir.2004). The 1993 amendments to Rule 11 changed the Rule's procedural requirements by adding

> a twenty-one day period of "safe harbor" whereby the offending party can avoid sanctions altogether by withdrawing or correcting the challenged document or position after receiving notice of the allegedly violative conduct.... The inclusion of a "safe harbor" provision [was] expected to reduce Rule 11's volume, formalize appropriate due process considerations of sanctions litigation, and diminish the rule's chilling effect. *Ridder,* 109 F.3d at 294 (citations omitted).

Courts determining Rule 11 motions have held that sanctions "under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending pleading." *Ridder,* 109 F.3d at 297. *See also Brickwood Contractors,* 369 F.3d 385; *In re Pennie & Edmonds,* 323 F.3d 86 (2d Cir.2003); *Mitchell v. Osceola Farms Co.,* 408 F.Supp.2d 1275 (S.D.Fla. 2005); *Smiley v. Summers,* No. 1:03 CV 250LGRHW, 2005 WL 1595668 (S.D.Miss. June 23, 2005).

**19.** "Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11...." Thus, authorities applying these standards under Rule 11 ... may be useful in applying Bankruptcy Rule 9011. *In re Mroz,* 65 F.3d 1567, 1572 (11th Cir.1995).

### 1. Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion

■ On July 30, 2005, Rotella sent Wernick a Rule 9011 communication warning that he would file a motion for sanctions if Lundborg's Stay Sanctions Cross–Motion was not withdrawn within twenty-one days. On September 9, 2005 Rotella filed Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion, wherein he argues that Lundborg's allegations, that Debtor and Rotella violated the automatic stay by undertaking action in the Bahamas, were frivolous and sanctionable.

Rotella maintains that Lundborg's Stay Sanctions Cross–Motion is not warranted under existing law or by a non-frivolous argument for the extensions, or modification, or reversal of existing law or the establishment of new law because, "[t]he automatic stay provision applies only to proceedings against a Debtor, and does not apply to actions by a Debtor, which if successful, would inure to the benefit of the Bankruptcy Estate." *Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion* ¶ 27. While authority exists for this statement of law,[20] the Court notes that the issue, whether a debtor must obtain relief from stay to pursue litigation in a non-bankruptcy court, remains an unsettled question of law. *See In re Mid–City Parking, Inc.,* 332 B.R. 798 (Bankr.N.D.Ill.2005)(surveying the case law regarding application of the automatic stay to debtors, debtors-in-possession, and trustees with respect to litigation in non-bankruptcy courts). Given the existing split of authority among courts, the Court finds that Lundborg's Stay Sanctions Cross–Motion does not violate Rule 9011(b)(2) as having been based on a legal theory that had no reasonable chance of success.

■ Lundborg's allegations also do not violate Rule 9011(b)(3) for lack of evidentiary support. The Order Denying Lundborg's Stay Sanctions Cross–Motion quoted the following portion of the transcript from the December 7, 2004 trial held in Bahamas:

THE COURT: Matter of 286 of 1999, a matter of Cole and Walker, I have Mr. Lockhart for— well, you are for Mrs. Walker in this matter?

MR. LOCKART: Yes. I think I will go on the record for both of them, because by mistake we filed a notice of appointment indicating my representation of both of them which was intended for something.

*The Order Denying Lundborg's Stay Sanctions Cross–Motion* at 2.

Given Mr. Lockhart's statement before the Bahamian Court that he would "go on the record" as representing both Debtor and Mrs. Walker, the Court finds that it was not objectively frivolous for Lundborg to allege on July 27, 2005 that Debtor's actions in the Bahamas were an attempt to gain control of an asset of the estate in violation of section 362(a)(3)[21]. In evaluating a Rule 9011 motion for sanctions, the Court's inquiry focuses on the merits of

---

**20.** Rotella cites the following cases in support of this statement: *Northwood Flavors, Inc.,* 202 B.R. 63 (Bankr.W.D.Pa.1996); *Maritime Electric Co., Inc., v. United Jersey Bank,* 959 F.2d 1194 (3d Cir.1991); and *Carley Capital Group, Inc., v. Fireman's Fund Ins. Co.,* 889 F.2d 1126 (D.C.Cir.1989).

**21.** 11 U.S.C. § 362 states in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of—

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

the pleading gleaned from the facts and law known or available to the attorney at the time of filing. *See Mroz*, 65 F.3d at 1571. Using this test Lundborg's Stay Sanctions Cross–Motion did not violate Rule 9011(b)(3). Although the Court ultimately found, pursuant to the August 10, 2005 evidentiary hearing, that Mr. Lockhart had been retained by Rotella on behalf of Mrs. Walker and not Debtor, sanctions are not available on the basis of hindsight.

■ Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion is not only substantively without merit, it is also procedurally deficient. Rotella sent his Rule 9011 communication to Wernick on July 30, 2005 and filed Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion with the Court on September 9, 2005. The Court heard and denied Lundborg's Stay Sanctions Cross–Motion at the August 10, 2005 hearing.[22] Thus the filing of Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion did not occur prior to judicial rejection of the Lundborg's challenged pleading as required by the procedural mandates of Rule 11. *See Ridder*, 109 F.3d at 297 (holding that "Springfield has given up the opportunity to receive an award of Rule 11 sanctions in this case by waiting to file the motion until after the entry of summary judgment.").

Rotella argues that Lundborg waived Rule 9011's twenty-one day safe harbor provision. In support of Rotella's conclusory allegation that Lundborg waived Rule 9011's safe harbor provision, he cites the case of *Giganti v. Gen–X Strategies, Inc.*, 222 F.R.D. 299 (E.D.Va.2004) in which the court found that the plaintiffs had "made clear their intent to forego the twenty-one day safe harbor." *Id.* at 307. The Court finds nothing in the record in this case to indicate that Lundborg waived the twenty-one day safe harbor period, nor does it find *Giganti* persuasive.[23]

## 2. Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion

The Court finds that like Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion, Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion is also deficient on procedural grounds. Lundborg filed Lundborg's Partial Joinder Motion on June 10, 2005. Rotella sent a Rule 9011 communication to Wernick on June 14, 2005 stating that he would file a motion for sanctions if Wernick did not withdraw Lundborg's Partial Joinder Motion within twenty-one days. Lundborg's Partial Joinder Motion was heard and determined by the Court on July 1, 2005. The Court's oral ruling was memorialized in the Order Denying Lundborg's Partial Joinder Motion entered August 5, 2005. Rotella filed Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion on September 9, 2005. The service and filing of a Rule 9011 motion must occur prior to final judgment or judicial rejection of the offending pleading. *See Ridder*, 109 F.3d at 297. In this matter Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion was filed

---

**22.** The fact that the Court's August 10, 2005 oral ruling on Lundborg's Stay Sanctions Cross–Motion was later memorialized on September 13, 2005 in the Order Denying Lundborg's Stay Sanctions Cross–Motion does not change the result here. The Court's ruling on the challenged pleading was announced in open Court on August 10, 2005.

**23.** The *Giganti* court stated that "there appears to be no authority in this circuit on what might constitute a valid, effective waiver of the Rule's twenty-one day safe harbor period...." *Id.* There is no authority for this question in the Eleventh Circuit either.

after the challenged pleading had been ruled upon and therefore must be denied on procedural grounds.

■■■■■ Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion must also be denied pursuant to the law of the case.[24] Gwynn's Motion and Lundborg's Partial Joinder Motion argued, among other things, that Rotella failed to disclose the guarantee of his payment by Debtor's wife from her fifty-percent interest in the proceeds of the sale of the Cat Cay Property. Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion argues that Lundborg lacked standing pursuant to Bankruptcy Rule 2017 to seek examination of Debtor's transactions with Debtor's attorney. The filing of Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion subsequent to the Court's ruling on the issue at the July 1, 2005 hearing, indicates that Debtor's counsel *failed* to comprehend the Court's oral ruling. The Court addressed the standing issue at the hearing.

> THE COURT: The first issue is standing. As the parties have noted, the Court has an independent role to deal with whether appropriate disclosure has been made. The Court considers the motion and the joinder as the parties' effort to bring an alleged failure to disclose to the Court's attention ... as "friends of the Court." And I mean that in the legal sense, obviously.
>
> *Transcript Excerpts Judge's Ruling Various Motions July 1, 2005* [C.P. 1016]

Not only did the Court address the standing issue that was subsequently raised in Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion, the Court declined to impose sanctions against Lundborg for having filed Lundborg's Partial Joinder Motion. The Order Denying Lundborg's Partial Joinder Motion found that the existence of the Guarantee was disclosed to the Office of the United States Trustee on August 14, 2003, however the Notice of Filing Disclosure of Compensation which referenced the Guarantee was not filed with the Court until May 28, 2004. The *Order Denying Lundborg's Partial Joinder Motion* ¶ 2. The Court found no evidence of any intentional wrongdoing on Rotella's part and consequently denied sanctions against Rotella as there was no harm to the parties or the estate by his failure to timely file the disclosures. *See Transcript Excerpts Judge's Ruling Various Motions July 1, 2005* [C.P. 1016]. The Order Denying Lundborg's Partial Joinder Motion also denied "Rotella's request for sanctions against Gwynn and Lundborg because Rotella failed to timely disclose the Notice of Filing Disclosures of Compensation." *The Order Denying Lundborg's Partial Joinder Motion* ¶ B.

Rotella's argument that Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion is separate and distinct from his former request for fees in connection with the hearing on Lundborg's Partial Joinder Motion is unavailing. The Court having already denied sanctions for the filing of Lundborg's Partial Joinder Motion, denies Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion based upon the law of case.

## II. *Lundborg's Motion to Quash is Granted in Part and Denied in Part*

■■■■ At the October 20, 2005 hearing on Debtor's Motion to Compel, the Court ordered the parties to attend mediation in

---

**24.** The law of the case doctrine requires a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding. *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 n. 3 (11th Cir.1990).

the (perhaps naive) hope that they might resolve their differences. The Mediation Order specifically ordered that "all discovery by and between the parties regarding the pending motions for sanctions shall be stayed and abated to allow the Court Ordered Mediation of the various motions for sanctions to be conducted and completed." *The Mediation Order* at ¶ 3. The Mediation Order also provided that if necessary the Court would consider discovery issues relating to the various motions for sanctions at a future status conference. *Id.* at ¶ 4. Nevertheless, on January 19, 2006 Rotella filed the Subpoena and caused it to be served upon Lundborg at the mediation. Lundborg asks that the Court find Rotella in contempt and impose sanctions against Rotella and Debtor for violating the Mediation Order. Rotella maintains that service of the Subpoena did not violate the Court's order, nor did it violate any the Federal Rules of Civil Procedure. He further maintains that Lundborg has continuously made herself unavailable for discovery to which he is entitled.

The Subpoena seeks discovery with respect to Rotella's Pending Sanctions Motions. Since the Court herewith has denied Rotella's Pending Sanctions Motions, Rotella's discovery requests are now moot. There is no need for a status conference as urged by Rotella, and as discussed above, the Court finds that scheduling hearings on Rotella's Pending Sanctions Motions is unnecessary and would only further waste the Court's and the parties' resources.

The Court also denies Lundborg's request for sanctions. The Court's denial is based upon counsel's representation that Lundborg will not pursue her pending sanctions motions or appeals if Rotella's Pending Sanctions Motions are determined in her favor, and they have been so determined.

### III. *Lundborg's Motion to Enlarge Time*

Lundborg filed three separate notices of appeals with respect to three orders of this Court. She has requested an enlargement of time in which to complete the designation of record and statement of issues on appeal until such time as Rotella's Pending Sanctions Motions are determined. Lundborg's Motion to Enlarge Time states that the orders appealed are integral to Rotella's Pending Sanctions Motions and that a determination in her favor would likely render the appeals moot. *Lundborg's Motion to Enlarge Time* ¶ 23. The Court having determined Rotella's Pending Sanctions Motions in favor of Lundborg and noting counsel's representation that she would not pursue her own pending sanctions motions or her remaining appeals, directs that within twenty days of the date of this Order, Lundborg shall either dismiss or file the designation of record and statement of issues with respect to each of her three appeals.

### IV. *The Discretionary Nature of Sanctions and the Over–Litigation of This Case*

This is without doubt, the most overlitigated case to come before this Court in the Court's twelve and one-half years on the bench. There remain no core issues for the Court to determine. Over 1500 docket entries have been made in the three years that this case has dragged on, a pace that rivals most complex chapter 11 cases. However, this is not a complex chapter 11 case, this is an individual chapter 7 case with a small number of parties. What should have been a seemingly straight forward chapter 7 case with a handful of parties has turned into a case of massive proportions. Since September 1, 2005, not a single one of the more than 400 docket entries filed in this case has dealt

with a substantive issue. The only pending matters left are sanctions cross-motions between the various parties. The decision to impose sanctions is a discretionary matter for the Court. Although the grounds stated above are adequate for denial of the various sanctions motions, the Court will not reward the attorneys for their excessive litigation practices and thus declines to exercise its discretion to award sanctions to either side. The judicial resources expended and the expenses incurred by the litigants in this case has been wasteful, unwarranted and a direct result of the acrimony between the parties and their lawyers.

## CONCLUSION

For the reasons stated above, the Court denies Rotella's Pending Sanctions Motions against Lundborg and her counsel. The Court also denies Lundborg's pending requests for sanctions against Debtor and Rotella. The Subpoena is quashed and Lundborg's Motion to Enlarge Time is Denied as Moot.

## ORDER

The Court, having reviewed the applicable law, the submissions of the parties, the testimony of the witnesses, the docket, and the conduct of the parties in this case, hereby

**ORDERS AND ADJUDGES** that the Omnibus Motion [C.P. 1317] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Debtor's Motion to Strike [C.P.926] is **DENIED** for lack of standing.

2. Debtor's Stay Sanctions Motion [C.P.1004] is **DENIED** for lack of standing.

3. Rotella's Rule 9011 Motion for Lundborg's Stay Sanctions Cross–Motion [C.P.1178] is **DENIED**.

4. Debtor's Rule 9011 Motion for Lundborg's Partial Joinder Motion [C.P. 1179] is **DENIED**.

5. The Subpoena is **QUASHED,** however Lundborg's request for sanctions in connection with Debtor's filing and serving the Subpoena is **DENIED**.

6. Within twenty days of the date of this Order, Lundborg shall either dismiss or file the designation of record and statements of issues on appeal with respect to each of her three appeals [Notices of Appeal: C.P. 1117, 1164, 1192].